# Richmond

## DEVERS v. DEVERS.

### November 20, 1913.

1. DIVORCE—*Desertion*—*Case in Judgment.*—The husband, in the case in judgment, is not entitled to a divorce from his wife on the ground of desertion. He seems never to have made any provision for a home for her nor to have taken care of her, and when she left him they parted as friends, and she went with his consent. Since their separation he has made no effort to get her to return, and has not answered her letters. It is his duty now to provide a home, however humble, for their habitation, and to invite her to return to her duty and share it with him. The well-being and good order of society demand that husbands and wives shall in good faith endeavor to reconcile their differences, and dwell together in unity and peace rather than to make occasion for resort to the courts for redress.

Appeal from a decree of the Circuit Court of Rockingham county refusing to grant the complainant a divorce.

*Affirmed.*

The opinion states the case.

*Charles A. Hammer,* for the appellant.

*No Counsel* for the appellee.

WHITTLE, J., delivered the opinion of the court.

This case is satisfactorily discussed in the opinion of his honor, the judge of the circuit court, as follows:

"The parties are both natives of this county. They were married at Atlanta, in New York State, the home of the

defendant at that time, on July 22, 1906. After they were married they lived at Newport News, Va., for a year, then at Cincinnati for a while, then returned to Tenth Legion, in this county, where both had formerly lived. Whether the parties were ever domiciled together after their return to Tenth Legion does not appear from the evidence. The plaintiff lived with his mother, and the wife for a couple of weeks before she went away was with her aunt. Whether a home was provided for the wife at the home of her mother-in-law or elsewhere has not been put in evidence. At the time the desertion by the wife is alleged to have taken place, the plaintiff testifies his wife came over to his mother's home, from her aunt's where she was then staying, and asked the plaintiff to help her to pack her trunk, whereupon he asked her, 'Where are you going?' to which she replied, 'I am going home.' And the witness testified this is all she said, and he asked her no more questions, and nothing more was said at the time.

"The witness testified that he and his wife were living in Cincinnati when the plaintiff decided that on account of the state of his mother's health he would have to return to his old home to care for her. His wife objected to this course, but he overruled her objections and persuaded her to come along with him, promising her that if she would wait until April he would send her home. He says she gave him no rest from the time he got home until she left, and that when he got back he did not have the money to send her home, and that she left before he could supply it, sending to her home for the money. All of this looks very much like the plaintiff consented to his wife's going to her old home, whether because of her insistence or because he was not able to settle her in a home, or from the two causes combined, or from some other cause, makes no difference. The further conduct of the parties is to the same effect. The testimony of the plaintiff shows that his wife

wrote to him on her arrival at her old home in New York, and he says he answered the letter. He also says he got other letters which he did not answer, the last one being received in October, 1908, nearly a year after she left. These letters were not put in evidence. The plaintiff says that they were friendly. He also says he and his wife parted friends. He also says he never asked his wife to return to him. It is true the plaintiff testifies that either before they left Cincinnati or elsewhere, perhaps by letter (he doesn't specify), his wife said she would never live with him at Tenth Legion, but it does not at all appear that she meant to separate herself permanently from her husband or even contemplated that result as the probable consequence of her conduct. It seems pretty plain that the husband consented to her going. He has not only not sought to have her return, but he discouraged and broke off the correspondence which she tried to keep up with him by letter, even to the extent of writing to him several letters that he never answered, and he seems never, either before or after her departure, to have made any provision to house her or take care of her."

It is clear from appellant's own version of the matter, as given in his deposition, that the circumstances attending his wife's departure from Virginia did not amount to wilful desertion or abandonment of her husband. He had agreed that if she would defer her visit to her parents in the State of New York until the following April, he would pay her traveling expenses. With this promise he failed to comply, alleging by way of excuse that he did not have the money. She afterward obtained the necessary means from her own people, and, with the knowledge of her husband who was present and assisted in packing her trunk, and who interposed no objection whatever to her going, left for the home of her parents. Appellant also testified that their parting was friendly. Continuing, he says:

"She wrote me when she got home, and I answered the letter. I got something like two or three letters from her. The same as I would get from one of my relatives." Yet he admits that without cause he discontinued the correspondence and never wrote to her again. In answer to the question, why he made no effort to induce his wife to return to Virginia and live with him, he replied: "I did not think it was any use, and the way she left me I was just like you would have been or any one else, a little too stout to ask her." This was his attitude toward his wife, whose only offense was that, with his consent, she had gone on a visit to her parents. He ignored her friendly letters, and was too proud to admit that he wished her to return; but he was not ashamed to use her absence, brought about in part at least by his own misconduct, as an excuse for a suit for divorce on the ground of wilful desertion.

Under the circumstances detailed it was, and still is, the duty of appellant earnestly to endeavor to bring about a reconciliation with his wife, to prepare a home, however humble, for their habitation, and to invite her to return to her duty and share it with him. The well-being and good order of society demand that husbands and wives shall in good faith endeavor to reconcile their differences and dwell together in unity and peace, rather than to make occasion for resort to the courts for redress. It is against public policy to encourage such litigation, and it is not the province of a court to grant relief to a plaintiff whose misconduct has contributed to bring about, if indeed he did not connive at, the condition of which he complains.

The decree of the circuit court is without error and must be affirmed.

*Affirmed.*