# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Tutwiler v. Tutwiler.

### March 16, 1916.

1. Divorce—*Case in Judgment—Reconciliation—Desertion.*—Upon the facts, in the case in judgment, there was no error in the decree of the lower court granting the wife a divorce from bed and board, and allowing her temporary alimony and counsel fees. It was the duty of the husband, when his wife left him, although she may not have been forced to leave, as she claims, on account of his cruelty and violence, then and afterwards to seek a reconciliation and to invite her to return. Subsequently, when she asked permission to return and the permission was not granted by him, he thereupon, in contemplation of law, deserted her.

2. Divorce—*Overtures of Reconciliation After Decree—Subsequent Relief —Code, Section 2266.*—Overtures of reconciliation made after the rendition of a decree for a divorce from bed and board come too late to have any effect upon the correctness of the decree, but where the cause is still pending the provisions of section 2266 of the Code will enable the trial court to afford the parties any relief to which they may hereafter show themselves entitled.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*N. T. Green,* for the appellant.

*Eason & I'Anson,* for the appellee.

Kelly, J., delivered the opinion of the court.

This is an appeal from a decree of the Court of Law and Chancery of the city of Norfolk granting a divorce *a mensa et*

*thoro* to Buena Tutwiler from her husband, W. C. Tutwiler, and awarding her certain alimony and counsel fees. Her bill alleges cruelty and desertion, and the contest here is over the sufficiency of the evidence to support the decree for divorce, the propriety of the allowances not being otherwise involved. We quote the charges in full from the bill as follows:

"The defendant, W. C. Tutwiler, has repeatedly cruelly treated and abused your oratrix in a cruel and inhuman manner, and threatened to take her life so that she was forced to seek refuge (in company with a police officer called in to quell the disturbance) at the home of a certain friend of hers in the city of Norfolk, Virginia, on or about the 28th day of September, 1913. After her fears had subsided your oratrix wrote the defendant letters seeking that he be reconciled to her in order that she might return to her home, said defendant replying by means of certain letters, in which he did not accede to her request that she be allowed to return to the home she was forced to flee from, as she felt, for the safety of her life. These letters are filed herewith, marked 'Exhibit B.' Said defendant, her, your oratrix therefore charges, deserted and abandoned your oratrix and has failed to support her ever since."

Much of the rather voluminous evidence in the cause deals with the unfortunate and unhappy course of the married life of this couple for some time preceding the separation on September 28, 1913. It is difficult, in view of the sharp conflict of testimony between the husband and wife upon many points as to which they are the sole witnesses, satisfactorily to fix as between them the balance or excess of blame for their previous troubles. Nor is it necessary that this be done, for the decision does not, as we shall see, turn upon that question, but upon whether the defendant did in fact finally desert and abandon the plaintiff as alleged. It is certain, however, that the appellant had by no means been free from fault, and that he had been particularly and inexcusably

unkind and offensive in sullenly declining to converse with his wife for days at a time. She describes these spells on his part as "pouting," and the record justifies the use of the term. No other word will quite so well express the idea.

On Sunday night, September 28, 1913, the plaintiff's father, sister and sister's husband assembled at Tutwilers' home, apparently at the plaintiff's instance, to discuss some part or phase of these matrimonial troubles. It was unfortunate and unwise, and probably wrong, for her to invite them and for them to come, although she claims that she was in great distress and hoped that some understanding might be reached by a family conference. She and her husband had quarreled during that week, and he testified that they had not spoken since the preceding Friday night. It is not surprising, therefore, that this family conference, composed, except as to him, of her close relatives, should have quickly resolved itself, as it did, into a family quarrel. He became violent and ordered them all to leave the house, and when they did not do so promptly, he went in a great rage for a policeman who came and in a quiet and tactful manner cleared up the situation by inducing rather than ordering them to leave. He advised Mrs. Tutwiler that he thought it was best for her to go, too, and she did so. Tutwiler says that he did not mean to order her out with the others, but she says she was afraid to stay, and that she left for that reason and because the officer advised her to do so. Her brother-in-law also testified that from what he saw he thought it would be unsafe for her to stay. Tutwiler, to say the least of it, stood by and acquiesced in the advice of the policeman, whom he had brought there, and without protesting or inviting her to remain saw her go out with the others from under the roof. The next day Tutwiler had the Norfolk *Ledger-Dispatch* publish the following notice: "My wife, Buena M. Tutwiler, having left my bed and board, this is to give notice that I will not be responsible for any debt contracted by her. W. C. Tutwiler." Shortly afterwards he placed a similar notice in the Norfolk *Virginian-Pilot.*

On October 9, 1913, Mrs. Tutwiler wrote her husband the following letter:

"October 9, 1913.

"MY DEAR HUSBAND:

"I have been thinking so much about our troubles lately that I am worried beyond expression. I want you to join with me in an effort to forget the past. My parents urge me to take this view of the matter. I will not here set out the cause of my leaving the house and returning to my parents. I do not want to think of them even. I am anxious to remain a true and faithful wife to you. Now that I am away from you, I suppose I should ask your consent and I do ask you consent that I return and hope you will grant it. Don't say no; but write to me at once 302 Dinwiddie street. I shall expect your answer tomorrow or certainly the next day.

"Sincerely your wife,

"BUENA.

"P. S.—This is my birthday."

He replied under date of October 10, 1913, as follows:

"DEAR BUENA:

"Your letter just received and contents noted. Now, Buena, you must give me a little time to think. I am in no condition to give you an answer now. I will meet you at the house and talk with you any time that may suit you, but you must come alone. Let me know and I will meet you there.

"Your husband,

CLARK TUTWILER."

She wrote him again on October 12, 1913, expressing regret at his failure to accept her suggestion, claiming that she, and not he, was yielding, and concluding as follows: "I offer to return, you must say whether you wish it or not, and the proposition is a simple one. I do not propose to place myself in a position alone in my sick condition in the presence of

your witnesses to settle our affairs.   If you desire to talk to
me come to see me."   She also told him in a postscript to this
letter that she had been compelled to have a surgical operation,
and that the bill of perhaps $75 or $100 had been charged to
him.

He replied October 14th as follows:

"NORFOLK, VA., October 14, 1913.
"MY DEAR BUENA:

"I have received your letter of the 12th instant.

"When I suggested that you come alone to me it was for the
purpose of having a frank talk with you without interference
on the part of anyone else.   Since you do not care to do this,
and as you seem to think you have more to forget than I have,
suppose we let the matter stand as it is.

"I noticed what you say about a bill for $75 or $100 for an
operation.   You doubtless know that I have given notice that
I shall not be responsible for any bill you make.   You make
upon your own account, not mine, and you must be responsible
for it.   No one is authorized to look to me.

"Yours very sincerely,

"W. C. TUTWILER."

Mrs. Tutwiler did not reply to this letter, and on January
6, 1914, he wrote her another letter in which he said that he
did not mean to indicate in his former letters that he did not
wish her to return, but he still did not ask or invite her to
come, or even say that he desired her to do so.   It is stated in
the brief of her counsel that this letter was written on the day
on which process was served upon him in this cause, and this
is not denied in the reply brief, but the fact does not appear
affirmatively in the record.   The letter does not, however, in
any event, affect our view of the case.

After the cause had been heard and decided adversely to the

appellant, he for the first time wrote the appellee asking her to return, and that letter was made in part the basis for a petition for a rehearing which was refused in the court below.

It will thus be seen that, probably due to his sullen disposition, the appellant and his wife had not been speaking to each other since the preceding Friday night; that on Sunday night, while he was in a violent fit of temper, he permitted, if he did not cause, her to leave his home upon the advice of a policeman whom he had brought there to clear the house; that on Monday he published a statement charging her with desertion, and saying that he would not be responsible for any of her obligations; that he not only did not attempt to induce her to return, as under the circumstances was his duty, but did not accept her voluntary appeal to be allowed to come back, and, when pressed for an answer, suggested that they "let the matter stand as it is," calling attention at the same time to the notice in the newspapers and repeating that he would not be responsible for any of her bills; and that he at no time invited her to return until after her suit had been decided against him.

Under this state of facts there was no error in the decree of the lower court. Conceding that Mrs. Tutwiler was not forced to leave with the officer, as she claims, because of her husband's cruelty and violence, it was his duty then and afterwards to seek a reconciliation and to invite her to return. *Devers* v. *Devers,* 115 Va. 517, 520, 79 S. E. 1048. And, upon a like concession, when she asked permission to return and the permission was not granted by him, he thereupon, in contemplation of law, deserted her. *Thornburg* v. *Thornburg,* 18 W. Va. 552, 527. Note and cases cited in 119 Am. St. Rep. 625.

When he wrote her on October 14, 1913, suggesting that the matter be allowed to stand as it then was, and telling her that he had withdrawn his support, ample time had then elapsed, if under the facts he was entitled to any time, to

consider her overtures, and his attitude and conduct was evidence of an actual breaking off of matrimonial cohabitation combined with an intent in his mind to abandon her.

With reference to the appellant's overtures made after the decree was rendered against him, we have no difficulty in holding that they were too late to have any effect upon the correctness of that decree. The cause is still pending, however, the decree for alimony is temporary only, there has been no divorce *a vinculo,* and the provisions of section 2266 of the Code will enable the lower court to afford the parties any relief to which they may hereafter show themselves entitled.

The decree is affirmed.

*Affirmed.*