## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Mary L. Richardson

v.

A. C. Richardson

June 24, 1922

By JUDGE BEVERLEY T. CRUMP

This proceeding is a suit by the plaintiff to obtain a divorce from bed and board from the defendant upon allegations of cruelty and desertion made in the plaintiff's bill, as to which she has taken testimony and now submits the case to the Court for adjudication, the defendant not having appeared.

It is shown that the plaintiff and defendant have been domiciled in Virginia for more than twelve months, their home and residence having been in Louisa County for many years past.

The defendant, being a resident of this State, the only ground upon which this Court of the City of Richmond can have jurisdiction over him must arise from one of two facts: (1) that the defendant is a resident of the City of Richmond or (2) that the parties last cohabited in this City.

It plainly appears that the defendant, at the time this suit was brought, resided in the County of Louisa and not in the City of Richmond, and that he still resides in Louisa.

The plaintiff endeavors to sustain the jurisdiction of this Court by testimony tending to show that in October 1921 various acts of cruelty on the part of the husband culminated in his compelling her to

leave their home in Louisa County, and she came to Richmond where she has been since residing; that on several occasions prior to the institution of this suit, which was on the 8th day of March 1922 the husband came to see her at her residence in Richmond and that on these occasions, which were mainly on Saturdays, they occupied the same room and bed, that the wife submitted to this through fear of the husband and against her volition; and that the last such occasion was on the 10th day of November, 1921. With those statements as a basis the witnesses testify that the parties last lived together as husband and wife in the City of Richmond.

Do these facts meet the requirement of the statute that the suit shall be brought in the County or City in which the parties *last cohabited* (Code of Virginia, section 5105)? I do not think so.

Cohabitation or matrimonial cohabitation means, in the law of divorce, the permanent or public living together or dwelling together in the marital relation. One of the necessary elements of desertion is the intent on the part of the offender to break permanently the cohabitation or continuance of the marital or family life. The wife alleges, that she has rightfully taken up her residence in Richmond, while the defendant still resides in Louisa County, where he deserted her, and that up to the time of such desertion there had been no breaking off of the matrimonial cohabitation or dwelling together. It is manifest that the parties cannot be regarded as cohabiting or dwelling together as man and wife in the same dwelling or the same place, so long as the separate dwelling and place of residence of the plaintiff is in Richmond and that of the defendant is in Louisa County, although while on a visit to Richmond the defendant may force the plaintiff to admit him to her bed, and she may submit to him as her husband through fear. If the cohabitation or continuous dwelling together of the parties as husband and wife in Louisa County was terminated by cruelty and desertion on the part of the husband, the evidence does not show that there was a presumption by the parties of the condition of cohabitation by their coming together or dwelling together in Richmond in such manner as to show that they had again taken up the thread of this marital cohabitation

where it was broken off. Cohabitation, in its proper meaning in the law of divorce, has reference to a continuing condition and not to an act. In Bishop on Marriage, Divorce and Separation, section 1669, the author gives the following definition: "To cohabit is to dwell together. So that matrimonial cohabitation is the living together of a man and woman ostensibly as husband and wife."

Judge Christian in *Bailey* v. *Bailey*, 21 Gratt. 43, says, "Desertion is a breach of matrimonial duty, and is composed first of the actual breaking off the matrimonial cohabitation, and secondly an intent to desert in the mind of the defendant." The learned judge here evidently uses the phrase in the sense of a continuing condition in which the parties live. And this is the meaning attached to the term generally in our decisions, the latest being in *Ringold* v. *Ringold*, 128 Va. 485, where the Court, after referring to the principle generally recognized that the mere cessation of marital intercourse in the sexual sense does not amount to cruelty or desertion, adds on p. 495, "Here we have not only an unjustified refusal on the part of the husband to permit the wife to occupy his room and bed, but a cruel and heartless course of conduct on his part which amounted to a general withdrawal from matrimonial cohabitation," and on p. 499 reference is made to the case of *Bailey* v. *Bailey*. See also *Tutwiler* v. *Tutwiler*, 118 Va. 724. I do not cite these cases as having any relevant bearing upon the question here, other than to show that, within the purview of the divorce law, the term cohabitation or matrimonial cohabitation means a continuing condition in which the consorts live.

In *Jennings* v. *McDougle*, 83 W.Va. 186, the Court says,

> The phrase "in the County in which the parties last cohabited," used in the statute necessarily means the place where the parties ceased to live together as husband and wife in the same house, and ordinarily carries with it the idea of a substantial measure of continuity and regularity.

In prosecutions under the statute against lewd and lascivious cohabitation it is held that cohabitation, according to its ordinary signification, is the living together of the parties in the same house as man and wife, and that occasional acts of incontinence do not make out the offense. *Jones* v. *Com.*, 80 Va. 18; *Pruner* v. *Com.*, 82 Va. 115.

My conclusion is that, in the case at bar, the parties last cohabited according to the meaning of that language in our Virginia statute, in Louisa County, and not in the City of Richmond.

This Court has therefore no jurisdiction of this case, because the defendant does not reside in Richmond, and the parties did not last cohabit here.

The defendant has not appeared, and the record shows that process to commence the suit addressed to the Sheriff of the City of Richmond not having been served, an alias subpoena in chancery was issued addressed to the Sheriff of the County of Louisa and was returned by him showing service on the defendant in Louisa County. It may be questionable whether this process is valid; and if it is not valid then the Court has not acquired jurisdiction over the person of the defendant and cannot proceed in this case for that reason. The present law as to the issuance and service of process, in Chapter 253 of the Code of 1919, is different in some respects from the former statutory law on the subject, but taken in connection with the venue statute in Chapter 252, the result would still seem to be that in the case of a transitory action at law, if the action is brought in a local Court which has no territorial jurisdiction, the Court acquires jurisdiction over the defendant if the process is served in the City or County in which the action is brought, and the defendant is compelled then to plead in abatement to the jurisdiction; but if the process is served out of the City or County in which the action is brought, then the process and service is void and the defendant need not appear and plead at all, except in the instances mentioned in section 6056 of the Code.

There is no special statute as to the issuance of summons to commence a divorce suit nor as to the *locality* of service, but the practice seems to have been to allow the process to be addressed to an offi-

cer of and served in another County or City than that in which the suit is brought whenever one of the essentials exists under section 5105 requisite to the jurisdiction of the Court over a case in which the defendant is a resident of Virginia. The section of the Code just mentioned may very well have this effect, as it expressly gives the plaintiff the option of bringing his suit in the county or city in which the parties last cohabited, although the defendant may reside in some other county or corporation. But it seems to me it would be going beyond the intent of the statute to hold that although neither of the jurisdictional requisites exists, yet the plaintiff by sending process to another City or County can compel the defendant to appear and defend the suit, or plead to the jurisdiction.

However this may be, a suit for divorce is in its essence and character very different from a transitory cause of action, over which any court of record has general jurisdiction; and the question really arising from the effect to be given our divorce statutes, in a case like this, is rather one of jurisdiction over the subject matter than over the person.

In the two recent cases of *Blankenship* v. *Blankenship*, 125 Va. 595, and *Towson* v. *Towson*, 126 Va. 640, the Court had before it the jurisdiction of the trial Court in divorce cases. The question in each of these two cases was whether the failure to allege or prove that one of the parties had been domiciled in Virginia for at least a year was fatal to the jurisdiction, and the Court held that it was. It is true that the question in these two cases was one of general State jurisdiction, and not of the venue or territorial jurisdiction of the particular Court in the State in which the suit was brought. But the reasoning in the *Blankenship* case necessarily leads to the conclusion that the right conferred by statute upon the local Court to exercise jurisdiction in a divorce case is dependent altogether upon the existence of one of the jurisdictional requisites mentioned in the statute and so becomes an element essential to the jurisdiction of the Court over the subject matter. In the *Towson* case the Court refers to the matter of territorial jurisdiction of the local Court as a question of venue only, but upon a careful reading of

the entire opinion and a consideration of the matter in which the questions presented for adjudication arose, it is fairly evident that the Court did not mean to say that the venue may not, when fixed definitely by a statute conferring jurisdiction, become an element of jurisdiction over the subject matter.

In the *Blankenship* case the Court approves the doctrine, generally accepted in most of the States, that, following the theory in England of this branch of our jurisprudence, power to grant divorces originally resided in the legislature, that neither courts of law or equity have any inherent power to dissolve marriage and that the power to decree a divorce is purely statutory. See also 9 R.C.L. p. 395. It is made mandatory upon the legislature by section 63 of our Constitution to confer jurisdiction upon Courts of the Commonwealth to grant divorces. This provision in our organic law appeared in the Constitution of 1850, and prior to that time the legislature did occasionally by an act of the General Assembly authorize a divorce. The Court in the *Blankenship* case holds that in exercising jurisdiction in divorce cases the Courts are acting under special statutory authority, and therefore the remedy provided for the enforcement of the right becomes a part of the right in a jurisdictional sense, as was held in *Dowell* v. *Cox*, 108 Va. 460; *Savings Bank* v. *Powhatan Clay Co.*, 102 Va. 274, and *Coleman* v. *Stave Co.*, 112 Va. 75. The Court said on p. 602 of 125 Va.:

> For while it is true that where a court of general jurisdiction has before it the proper parties and the subject matter is of such nature that it would have general jurisdiction of the cause, if it had territorial jurisdiction thereof, such territorial jurisdiction (along with the other matters essential to the general jurisdiction of a Court) will, in the absence of proper pleading and proof disclosing the contrary, be presumed to exist, although they do not affirmatively appear from the record; that is not true where the Court is acting in the exercise of a special statutory authority. In such case the territorial

jurisdiction will not be presumed, but must be made to affirmatively appear from the record; otherwise, as is well settled, any decree the Court may enter will be void for lack of jurisdiction to enter it.

As stated above the Court in the *Blankenship* Case had before it only the complaint on a demurrer that the bill failed to allege that one of the parties had been domiciled in Virginia for at least a year. But a consideration of the character and purpose of section 5105 of our Code leads with impelling force to the conclusion that the principles above stated apply to each jurisdictional requisite. Section 5105 of the Code has for its purpose compliance with the mandate of the Constitution that the legislature be no longer empowered to grant divorces but that jurisdiction to that end be vested in the Courts. And that section contains all the statutory law covering the jurisdiction of the Courts in this respect. It provides that no bill shall be maintainable in any Court of the State unless one of the parties has been domiciled in the State for at least one year. When that essential fact of State jurisdiction exists it is made mandatory that, when the defendant is a resident of Virginia, the suit be brought where the parties last cohabited or where the defendant resides. The statute, in the matter of local jurisdiction, requires, it is to be noted, that the suit "shall be brought" in the proper county or corporation, not "may be brought" as in an ordinary venue statute. The language of the last sentence of the section is equivalent to the provision that "no bill shall be maintainable" unless suit is brought in the proper local court.

In 2 Schouler on Marr. Div. & Sep. (1921), section 1482, the author states as a general rule that when the local venue of divorce cases is fixed by a special statute relating to the jurisdiction of the Courts in divorce cases only, the venue becomes jurisdictional and cannot be waived.

And see *Watts* v. *Watts*, 130 Ga. 683. In 1 Hogg's Equity Procedure, p. 174, the author, in stating the essentials for a bill to obtain a divorce, says, "The County prescribed by statute in which the suit must be brought is likewise a jurisdictional fact, and the

residence of the parties relating to this subject should also be averred in the bill."

The character of legislation in the several States, conferring jurisdiction upon the Courts to grant divorces, differs so much that but little aid can be derived from the decisions of an appellate Court of another State, unless the statute is similar in form and purport to ours.

The statute of West Virginia, which was doubtless taken from the legislation in Virginia, is practically the same as ours.

In the case of *Jennings* v. *McDougle*, *Judge*, 83 W.Va. 186, the Court had before it the same questions presented in the instant case. In the West Virginia case application was made to the Court for a writ of prohibition to prevent the Circuit Judge of Wood County from entertaining jurisdiction over a divorce case brought in that County, the defendant in the divorce case being the petitioner for the writ of prohibition. The grounds of the petition were that the bill showed on its face that the parties did not last cohabit in Wood County, and that the defendant resided in another County. The Court held that these matters were jurisdictional and prohibited the lower Court from proceeding with the case. The Court says (on p. 188):

> The statute prescribing the jurisdiction of Circuit Courts in divorce cases (ch. 64, sec. 7, Code 1918) is: "The suit shall be brought in the county in which the parties last cohabited, or (at the option of the plaintiff) in the County in which the defendant resides, if a resident of the State; but, if not, then in the County in which plaintiff resides." This provision circumscribes and limits the jurisdiction of Circuit Courts to grant divorces by three specific conditions, two where defendant resides in this State, one where he is a nonresident of the State. As between the first two, plaintiff had the option or the right to select in which of two counties she should prosecute the suit, the first in the county in which she and her husband last

cohabited together as husband and wife, if such cohabitation occurred in a county other than that in which he resided. But if it did not, then she could sue only in the county of his residence. The statute is susceptible of no other construction. Its language is imperative, unambiguous and specific. It designates the forum and limits the jurisdiction to two counties and only two, where the party in default is a resident of the State, notwithstanding the general jurisdiction of circuit courts.

Further the Court says (on p. 193):

Furthermore, it is said that, if the Court has general jurisdiction of the subject matter of the controversy, it has the power and may of right determine all other questions affecting jurisdiction, and when these are to be determined upon contested facts which the inferior tribunal is competent to inquire into and decide, prohibition will not be granted though the Court should be of opinion that the questions of fact have wrongfully been determined by the Court below, and if rightly determined would have ousted the jurisdiction. Circuit Courts, it is true, are courts of general jurisdiction and as such may hear and determine suits for divorce. They do not have authority, however, or power to exercise jurisdiction in any divorce case if the defendant resides in a County outside of the circuit, unless the parties last cohabited in the County where the suit is brought; and unless such jurisdictional fact is made reasonably apparent by the bill itself, there is no occasion for the application of the rule contended for, because there are no contested facts to be determined. The bill vouches the fact of defendant's residence in Doddridge County at the time the suit was brought, and hence put the Court upon its guard as to the second

fact necessary to empower the Court to proceed with the cause to final decree.

Upon an examination of chapter 64 of the Code of West Virginia I find that its general structure is similar to chapter 205 of our Code, and that section 7 is essentially the same as our section 5105. It is to be noted that neither the statute of Virginia nor of West Virginia makes any distinction, in the matter of jurisdiction, between divorces from bed and board and divorces from the bond of matrimony.

Prof. Lile of the University of Virginia entertains the same view taken in this opinion as to the question of jurisdiction under discussion. In § 402 of his treatise on Equity Pleading and Practice (1922), he says:

> As the jurisdiction of the matrimonial causes mentioned is a special statutory and limited one, it would seem that such jurisdiction must be exercised in conformity to the statute bestowing it. In such cases, as heretofore shown, the question of venue becomes jurisdictional with the result that not only is no plea in abatement necessary to raise the question of venue, but the bill is demurrable unless it shows on its face that the suit is instituted in its proper statutory venue. It follows that the objection cannot be waived, and the Court will *mero motu* dismiss the bill when defective in this respect.

For the reasons stated I am constrained to decline to take jurisdiction of this case, being convinced that the defendant has not been validly brought before the Court, and that this Court has no jurisdiction of the subject matter of the suit.

The evidence submitted on behalf of the wife shows that she has been treated with gross brutality by the husband, but any relief sought to be granted in this jurisdiction would be void and unenforceable, as her suit should have been brought in the Circuit Court of Louisa County, which Court alone has jurisdiction to hear and determine the case.

An order therefore will be entered dismissing the cause for lack of jurisdiction on the part of this Court to adjudicate it.