# Staunton.

## MARY RIVES DUFF v. JAMES DUFF.

### September 23, 1926.

1. DIVORCE—*Desertion—Duty to Seek Reconciliation—Case at Bar.*—In the instant case, a divorce suit, the wife deserted her husband without justification or excuse and against his protest. The desertion was the second desertion within two months. Upon the wife's return after her first desertion, brought about at the earnest solicitation of the husband, she remained less than two weeks, leaving with the statement that she never desired to return again.

   *Held:* That in view of this state of facts, there was no further legal duty upon the husband again to seek a reconciliation in order to legally establish desertion on the part of his wife.

2. DIVORCE—*Desertion by Wife—Overtures of Reconciliation by Wife—Case at Bar.*—In the instant case, a suit for divorce, the wife deserted her husband without justification. There was no direct communication from the wife to the husband after the desertion. Communications passed between the husband and the wife's father and her doctor. There was no evidence that such overtures for a reconciliation as these communications contained ever came from or were suggested by the wife.

   *Held:* That there was no such offer of reconciliation by the wife as would bar her husband's right to a divorce.

3. DIVORCE—*Desertion—Offer of Reconciliation.*—If a wife, having left her husband without just cause, comes back to him and he refuses to receive her, this is a desertion in the party so refusing from the time of the refusal; but to entitle a person to a divorce under such circumstances, it must appear that the offer of return was sincere and in good faith, free from any improper qualifications or conditions and really intended to be carried out in its spirit if accepted.

4. DIVORCE—*Desertion—Offer of Reconciliation after Decree.*—An offer of reconciliation after decree has been rendered in a divorce suit comes too late.

5. DIVORCE—*Alimony—Wife's Voluntary Abandoning her Husband.*—A wife who has voluntarily abandoned her husband should not have a decree for a support and maintenance unless her abandonment of him was without her fault, rendered necessary for her safety and happiness, and was consistent with social order and public policy.

6. DIVORCE—*Desertion—Custody of Children—Case at Bar.*—In the instant case a husband obtained a divorce from his wife on the ground of desertion. The custody of the two children, boys aged one and two years respectively, was awarded to the father for six months of the year and to the mother for a like six months.

   *Held:* That under all the circumstances, this provision for the custody of the children was a wise one. Furthermore, as the cause was continued on the docket, the lower court could make such change of custody as should be advisable.

Appeal from a decree of the Circuit Court of Montgomery county, in a divorce suit. Decree for defendant on his cross-bill, and complainant appeals.

*Affirmed.*

The opinion states the case.

*James E. Heath,* for the appellant.

*Harless & Colhoun* and *Benj. Watkins Lee,* for the appellee.

CHICHESTER, J., delivered the opinion of the court.

Complainant, Mary Rives Duff, appellant here, filed suit for divorce from her husband, James Duff, February, 1924, on the grounds of cruelty and desertion, and prayed for the custody of two children (boys) aged two and one years respectively, born of the marriage, and for counsel fees and alimony. To this bill respondent, James Duff, filed his answer and cross-bill, in which the cruelty and desertion alleged against him are denied, and in which he charges complainant with grave acts of indiscretion, wanton neglect of their infant children and wilful abandonment and desertion of respondent on December 18, 1922.

Complainant answered the cross-bill denying the charges contained therein and upon the issue joined

and depositions taken in behalf of both parties the court decreed that the complainant "has since the 18th day of December, 1922, without just cause, wilfully deserted and abandoned the defendant" and granted him a divorce "*a mensa et thoro*" from the complainant on his answer and cross-bill. The custody of the children was awarded to the father for six months of the year and to the mother for a like six months.

Complainant was granted an appeal and supersedeas from this decree. The evidence fully justified the conclusion reached by the trial court.

It would serve no good purpose to go into the details of the evidence bearing upon the relations of this husband and wife prior to December 18, 1922. It is sufficient to say that their association together was far from happy; that the wife had deserted her husband once before, on November 14, 1922, without cause, but had been persuaded by him to return to his home; that she was neglectful of her duties as a wife and mother, and that her husband was, for the most part, tolerant, considerate and even charitable as to her conduct. The husband's testimony as to these matters was fully corroborated, while the testimony of the wife, to the contrary, lacked corroboration.

**It is contended,** however, that even though this was so it was the duty of respondent to seek a reconciliation with complainant or at least to meet alleged overtures made by complainant's father to bring about a reconciliation.

We are referred to the case of *Tutwiler* v. *Tutwiler*, 118 Va. 724, 88 S. E. 86, in which Judge Kelly, speaking for the court, said: "Under this state of facts there was no error in the decree of the lower court. Conceding that Mrs. Tutwiler was not forced to leave with the officer, as she claims, because of her husband's

cruelty and violence, it was his duty then and afterwards to seek a reconciliation and to invite her to return. *Devers* v. *Devers*, 115 Va. 517, 520, 79 S. E. 1048. And, upon a like concession, when she asked permission to return and the permission was not granted by him, he, thereupon, in contemplation of law, deserted her. *Thornburg* v. *Thornburg*, 18 W. Va. 552, 527. Note and cases cited in 119 Am. St. Rep. 625."

The circumstances of the *Tutwiler Case* and of the *Devers Case* referred to, were very different from those of the instant case. In the former, Tutwiler's conduct was largely instrumental in causing his wife to leave his home and he allowed her to go without protest or invitation to remain. In the latter case the wife left the husband's home with his consent for a visit to her parents and he broke off correspondence with her and made no effort to provide her a home or get her to return to him. In both cases the court held that there was not only no wilful desertion on the part of the wife, in the beginning, but overtures by the wives in each case were ignored or rejected by the husbands.

[1] In the case at bar not only did the complainant desert her husband on December 18, 1922, without justification or excuse and against his protest, but this was the second desertion of her home and husband within two months, and upon her return to him on December 5, 1922, brought about at his earnest solicitation, she remained with him less than two weeks, leaving with the statement that she never desired to return again. In view of this state of facts, without reference to her conduct during the brief period of her return, which was not conducive to reconciliation with her husband or calculated to bring about domestic happiness, there was no further legal obligation upon

the respondent again to seek a reconciliation in order to legally establish desertion on the part of his wife. He had done all that could be fairly expected of a husband under the circumstances.

It is necessary to consider the alleged overtures for a reconciliation on the part of the wife.

[2] There has been no direct communication from complainant to respondent since the desertion on December 18, 1922.

On December 20, 1922, J. A. Rives, complainant's father, telegraphed respondent: "If possible come to Norfolk, talk with me." Respondent replied by letter dated at Denniston, Va., December 22, 1922.

"Mr. J. A. Rives,
     "Norfolk, Virginia.
"My dear Sir:
     "In reply to your telegram of yesterday, I wish to say that it is impossible for me to make the trip to Norfolk at present, even if I desired to do so; and I may say, frankly, that I have no such desire. Besides, may I remind you that the content of your message is somewhat vague but also strangely imperious?. Before proceeding further, under any circumstances, it would be necessary that I know very definitely the nature and object of this 'talk' with you. If it is your pleasure, then, and if you think it advisable, you may notify me specifically what you desire. However, if you and I have the same subject of conversation in mind, such a conference as you suggest would, in my opinion, be worse than useless.
                         "Yours very truly,
                                   "JAMES DUFF."

To this letter J. A. Rives replied:

"Mr. James Duff,
    "Denniston, Va.
"Dear Sir:
    "Yours of the 22nd December to hand and noted. To relieve your mind, I will say, that your presence in 'Norfolk' as far as I am concerned is entirely unnecessary and not desired.    ·
    "My wire could in no way seem vague and imperious to one knowing as you did the purpose for which it was sent.  For your information, I will say, that just as soon as conditions here will permit you will have the pleasure of an interview from me.
    "I wish to thank you and your brother for the nice treatment given 'Mary' at 'Denniston,' and when I see you both I will tell you just what I think you are and in a language you will not fail to understand.
                    "Yours,

                              "J. A. RIVES."

This correspondence between his father-in-law and respondent ended with the latter's reply to the above letter in which was narrated the conduct of complainant during the period between December 5, 1922, and December 18, 1922.

There is no evidence that such overtures for a reconciliation as appear from this correspondence ever came from or were suggested by complainant, and it cannot be considered as an effort on her part to bring about a reconciliation.  It was a message from complainant's father asking respondent to come to Norfolk for a talk with him.

Neither the message itself nor its author disclosed the purpose of the proposed interview, although the

defendant promptly, by his letter, asked to be enlightened as to that fact.    Furthermore, defendant could not assume that the plaintiff who had just deserted him with the declared intention of never returning, was seeking a reconciliation or even had knowledge of the sending of this telegram.

There were two letters received by respondent from a Dr. Chapman who treated complainant at a hospital at Towson, Md., where she was admitted on January 12, 1923, and discharged June 10, 1923, which are claimed to be overtures for a reconciliation on the part of complainant.    These letters are as follows:

"January 12, 1923.

"Mr. James Duff,
      "Denniston, Va.
"Dear Sir:

"Perhaps you have heard through Mr. Rives of Baltimore that Mrs. Duff was brought to us today. On account of the somewhat indefinite and vague information along certain lines in regard to the beginning of her illness and the symptoms as they have manifested themselves, it would be a great help to us in forming some conception of her mental illness if you would give us a frank description of her case and any information that you think should be in our possession in order that we may come to a clear conception of her illness and be of some help to you in her care.

"We should be very glad to have you visit us at the hospital if it is convenient for you to do so.   Personal contact is much more satisfactory than written information.    Of course, if it is impossible for you to come we shall be very glad to have any information you may send us.

Very truly yours,"

"June 11, 1923.

"Mr. James Duff,

"Denniston, Va.

"Dear Mr. Duff:

"Mrs. Duff has been during the last few months in very good condition. She has made steady improvement—has become calm, developed a certain degree of insight in her condition, is occupied and interested in objective things. She is beginning to return to normal activities and we feel it is fair to her now to have her plan to take up some kind of occupation or interests outside the hospital. When asked about her plans, she has said that for the sake of her children she would like to pick up the old life again. On another occasion she has suggested teaching.

"We shall be glad to hear from you and have any ideas you may care to give us.

"Very truly yours,"

Respondent did not reply to either of these letters.

Complainant states in her deposition that these letters were written at her instance and with her approval, but the letters themselves make no such statement and Dr. Chapman in his deposition does not say that they were written at her request or even with her knowledge. The first letter however does not suggest that a reconciliation would be agreeable to complainant. It is a purely professional letter seeking information as to the history of the patient in the writer's care.

The second letter contains information as to complainant's condition and adds that when asked about her plans she has said to the writer that *for the sake of her children* she would like to take up the old life. There was no message to the husband and nothing

that could be considered an overture on the part of the complainant for a reconciliation. She did not write the letter and it neither contains an offer on her part to return to her husband nor an expression of desire to renew her marital life with him. At most it shows, if she had anything to do with the writing of it, that she would tolerate her husband for the sake of the children, or she might undertake teaching.

[3] Mr. Bishop, in his work on Marriage and Divorce, section 513, says: "If a wife, having left her husband without just cause, comes back to him and he refuses to receive her, this is a desertion in the party so refusing from the time of the refusal; but to entitle a person to a divorce under such circumstances, it must appear that the offer of return was sincere and in good faith, free from any improper qualifications or conditions and really intended to be carried out in its spirit if accepted."

At the time of and prior to the writing of this letter, the plaintiff, according to the evidence of Dr. Chapman, had been discharged from the hospital and, according to her own testimony, had returned to her father's home in Norfolk where she remained until she instituted this suit.

It is significant too that in her bill she asks for a divorce on the grounds of cruelty and desertion and she nowhere alleges that she had ever made any overtures at all for a reconciliation.

[4] There was an offer of reconciliation on the part of complainant's father after the decision of the court against her had been announced, but this offer came too late. *Tutwiler* v. *Tutwiler, supra.*

For the reasons assigned we see no error in the decree of the lower court granting respondent a divorce on the ground of wilful desertion.

Nor did the lower court err in refusing to allow complainant money for her maintenance and support.

[5] "A wife who has voluntarily abandoned her husband should not have a decree for a support and maintenance unless her abandonment of him was without her fault, rendered necessary for her safety and happiness, and was consistent with social order and public policy. *Carr* v. *Carr*, 63 Va. (22 Gratt.) 168; *Haynor* v. *Haynor*, 112 Va. 123.

The decree provides for the maintenance of the children by the respondent at all times whether in custody of the father or the mother, as well as payment by respondent of all traveling expenses incurred in visiting their mother and in returning to respondent's home.

[6] Nor are we disposed to interfere with the court's provision for the custody of the children. Under all the circumstances of the case, and considering the tender years of the infants, being under school age, it seems a wise provision. Furthermore the cause was continued on the docket of the court and if anything should transpire to indicate that a change of custody would be to the best interest of the children, the lower court can, and no doubt will, make such change as is advisable. *Butler* v. *Butler*, 145 Va. 133 S. E. 756, June term, 1926.

We are of opinion therefore to affirm the decree of the circuit court.

*Affirmed.*