# Wytheville

## HANNAH J. KERR v. VINCENT B. KERR'S HEIRS.

June 22, 1944.

Record No. 2813.

Present, All the Justices.

The opinion states the case.

*John D. White* and *Wayt B. Timberlake, Jr.*, for the plaintiff in error.

*Herbert J. Taylor* and *J. M. Perry*, for the defendants in error.

Hudgins, J., delivered the opinion of the court.

Vincent B. Kerr, a resident of Staunton, died intestate on June 10, 1941, survived by his widow, Hannah J. Kerr, and several nieces and nephews. The widow's application for appointment as administratrix on the estate was opposed by the nieces and nephews. From an order denying the application, the widow obtained this writ of error.

If normal relations between husband and wife exist at the time of the death of one of the consorts, the surviving spouse is entitled to be preferred in the administration

of the estate of the deceased spouse. Code of 1919, sec. 5360. Three statutes (Code of 1919, secs. 5123, 5140 and 5277) prescribe the conditions which deprive the surviving consort of any right, title or interest in the deceased spouse's estate. Section 5277 prescribes the conditions which deprive the surviving spouse of any interest in the personal estate of the deceased spouse. Prior to 1930, section 5123 prescribed the conditions which deprived the widow of dower. This section was construed in *Harman* v. *Harman*, 139 Va. 508, 124 S. E. 273, in which it was held that before a widow could be barred of dower in her husband's estate it was necessary to prove that she had voluntarily deserted her husband and that afterwards, when requested by him so to do, she, without cause, refused to return to him. However, the holding in that case is not now pertinent, as the General Assembly of 1930 changed the statute to read: "If a wife wilfully deserts or abandons her husband and such desertion or abandonment continues until his death, she shall be barred of all interests in his estate as tenant by dower, *distributee, or otherwise*." (Italics supplied.) See Michie's 1942 Code, sec. 5123.

The court is asked to apply these statutory provisions to the following facts. The parties were married on November 2, 1922, when Vincent B. Kerr was 65 years of age and Hannah J. Kerr was 55. At the time of the marriage, Mrs. Kerr was a resident of Purcellville, Loudoun county, Virginia. She owned a house and lot, 77½ acres of land and personal property valued at more than $5,000. The two years following the marriage the couple traveled or lived in the west. Mrs. Kerr paid $200 on the expenses of this trip. The couple then moved to Staunton and lived together in a dwelling owned by the husband. At the time of his death, Mr. Kerr owned 157 acres of land in Augusta county, several dwellings in or near Staunton appraised at $11,250, and personal property valued at $4,605. His health was poor and he was not engaged in a gainful occupation, hence he depended entirely upon the income from his comparatively small estate for maintenance of himself and his wife. He was

habitually prudent and frugal. Both husband and wife contributed to the maintenance of the home from their separate incomes. It seems that Mrs. Kerr furnished her own clothing, furniture and such other articles as she desired beyond sustenance provided by her husband. He invested her principal and collected the interest and income therefrom for her. Mr. Kerr's deafness became so acute as he grew older that it was difficult to converse with him.

The parties lived together as husband and wife with varying degrees of satisfaction until September, 1938, when Mrs. Kerr left her husband, taking her tangible personal property, and returned to her old home in Purcellville, where she continued to reside until her husband's death in June, 1941.

As these facts are conceded, the only question presented is—Did Mrs. Kerr wilfully desert or abandon her husband within the meaning of Va. Code 1942 (Michie), sec. 5123?

When Mrs. Kerr abandoned her husband and his home, she intended the separation to be permanent. She said that she had no intention of coming back to live with her husband. "I never liked Staunton anyway." On February 1, 1940, she wrote her husband for the addresses of several parties, some of whom were indebted to her, and closed the letter as follows: "Then I think you will be through with me. I greatly appreciate what you have done for me and think it is time for us to close out." When asked about these statements, she said: "I do not remember that. I meant we would be closed out from him collecting my money." On May 7, 1941, she had her voting precinct moved from Staunton to Purcellville, Loudoun county, Virginia. She authorized an attorney in Leesburg to institute divorce proceedings. This attorney wrote to Mr. Kerr and his attorney, stating that the wife desired a divorce, alimony and suit money. Mr. Kerr never replied to this letter.

██ The separation with intent to permanently abandon her husband is clearly proven. The wife's contention is that her husband's conduct justified her in leaving him. We have repeatedly held that one spouse is not justified in leaving the other unless the conduct of the wrongdoer is a sufficient

foundation on which to base a suit for divorce. Nothing short of such conduct will justify a wilful separation or a continuance of it. *Towson* v. *Towson*, 126 Va. 640, 102 S. E. 48; *Gentry* v. *Gentry*, 161 Va. 786, 172 S. E. 157; *Hendry* v. *Hendry*, 172 Va. 368, 1 S. E. (2d) 340; *Hundley* v. *Hundley*, ante, p. 14, 27 S. E. (2d) 902; *Word* v. *Childs*, ante, p. 394, 29 S. E. (2d) 227.

Even if it be conceded that the evidence is equally balanced on this vital issue, the finding of a trial court upon a factual matter, such as is involved here, supported by substantial evidence, is entitled to great weight, is presumed to be correct and will not, as a general rule, be disturbed on appeal. See 2 Virginia and West Va. Digest, Appeal and Error, sec. 1009 (3).

Appellant contends that the burden of proof was upon the appellees and not upon her. She made the application for letters of administration. After appellant had proven the marriage to decedent, the burden of going forward with, or producing, evidence was upon the appellees; and after all the evidence had been taken, the burden of proof was still upon the party who maintained the affirmative of the issue. The widow alleged that she was one of the distributees of her husband's estate.

The evidence tending to prove justification for desertion is vague and indefinite. The widow testified that her husband was "mean" to her, that sometimes he refused to buy the kind of food she liked, failed or refused to call a doctor when she was sick, and "fussed" with her about her investments, and that they disagreed about other more or less trivial matters. Notwithstanding these alleged acts of meanness, she testified that, when she left her husband's home, she said to him: "If you need me, you sell your things and come over and live with me." If the conduct of the husband had been so cruel and "mean," as she claims, it is extremely doubtful whether she would have extended this invitation to him. While the modern trend is, as it should be, to extend equal rights to the male and female of the species, the husband is still regarded as the head of the

family and ordinarily is entitled to select the domicile, provided the wife is not there subjected to interference or indignities by third parties. There was no evidence that this was the situation in the case at bar. *Robinette* v. *Robinette*, 153 Va. 342, 149 S. E. 493. For other cases, see 3 Michie's Digest of Va. and West Va. Reports, Perm. Supp., 18.

The wife conceded that her husband had prudently and carefully invested her money, and that during his transactions of this business for her no part of her principal had been lost. Yet, in her letter to her husband, dated October 14, 1940, she accused him of consistently stealing money from her and demanded that he pay her interest, which she knew he had not collected, on one of her investments. Within three years after she had assumed charge of her investments, she lost $3,000.

A careful review of the record reveals that a preponderance of the evidence supports the conclusion of the trial court. Its order is affirmed.

*Affirmed.*