## Richmond

RICHARD D. NASH v. CARRIE W. NASH.

November 28, 1955.

Record No. 4419.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*T. W. Messick*, for the appellant.

*George F. Abbitt, Jr.* and *Robert B. Spencer, Jr.*, for the appellee.

HUDGINS, C. J., delivered the opinion of the court.

Carrie W. Nash in her bill for divorce charged that on September 4, 1952, her husband, Richard D. Nash, deserted her without cause. She prayed for a divorce, funds to prosecute the suit, temporary and permanent alimony. Richard D. Nash, respondent, filed an answer denying the material allegations of the bill and later filed a cross-bill alleging that his wife without cause had deserted him, and

praying that he be granted a divorce from her. On the pleadings and depositions duly taken and filed, the court granted the complainant a divorce and ordered respondent to pay her $25.00 a week alimony. From that decree respondent obtained this appeal.

There is very little conflict in the testimony, which may be summarized as follows:

Prior to the marriage of the parties on February 12, 1926, the wife had lived with her parents in Pamplin, Appomattox County, Virginia. After the marriage the duties of the husband as an employee of the Norfolk & Western Railway Company required him to live in different places. For several years after the marriage they lived with the wife's parents in Pamplin. They moved to Windsor where they remained for two or three years and then to Cleveland, Virginia, where they remained a year. In 1943 the husband was transferred by his employer to Honaker, Virginia, where he and his wife lived together at the Honaker Hotel for a month or more, when the wife's father, John Henry Davis, suffered a paralytic stroke. The wife, with the consent of her husband, returned to Pamplin and helped her mother take care of her father, who remained a semi-invalid or invalid until his death in 1944. Thereafter, the wife, with the consent of her husband, continued to live with her mother in Pamplin. The husband, while living and working in Honaker approximately 250 miles away, continued to support and maintain his wife, and visited her practically every other weekend until September, 1952.

No children were born to the marriage. For the past six years or more the wife has been employed in a store in Pamplin earning $40.00 per week.

On September 3, 1952, the husband went to Pamplin with the intention of spending his vacation with his wife at her mother's home. On September 4, 1952, the husband and wife seem to have had a slight disagreement over some trivial matter. The wife and her mother testified that immediately after this disagreement the husband said he was "going to leave"; he declined their invitation to stay to dinner, left and did not again visit his wife in Pamplin until after June 17, 1953, on which date the bill in this case was filed.

The wife testified that the only direct communications she had from her husband between September 4, 1952, and the institution of this suit were a Christmas card, an annual pass on the Norfolk & Western railroad and a $100.00 bond. She admitted that her

husband had left with her several checks payable to her, signed by him, with the amounts blank, and had authorized her to fill in the blanks for any reasonable sums that she desired or needed. She did not cash any of the checks, nor does it appear that she acknowledged receipt of or thanked her husband for the pass and the bond.

The husband testified that on numerous occasions prior to the institution of the suit he had requested his wife to live with him in Honaker where his work compelled him to be; that he was fond of his wife's mother and was on excellent terms with her; that he offered time and again to support both his wife and her mother if they would live with him in Honaker; that living quarters at the hotel were good, but if they were not satisfied with living there, he would rent or build a home for them, but his wife had refused to leave Pamplin.

This appears to have been the status of the parties when, on April 16, 1953, George F. Abbitt, Jr., as attorney for the wife, wrote the following letter to the husband:

"Dear Mr. Nash:

"Your wife, Mrs. Carrie D. Nash, has discussed with me the fact that she is having difficulty in meeting her obligations in view of the fact that a good portion of what she is able to earn now is going for the support of her mother and further in view of the fact that you are not making contributions for her at the present time.

"I hope you will take this letter to your attorney and let him know the facts so that he can advise you and I am sure that your attorney will advise you that under the law it is the duty of the husband to provide for the substantial portion of his wife's support.

"She desires that we make arrangements for an amount for you to contribute to her monthly in a friendly manner as she does not desire to make it embarrassing for you or for herself.

"Therefore, I shall look forward to hearing from you or your attorney at an early date, with an idea that we can work out some plan whereby you can begin to make regular monthly contributions towards the support and maintenance of your wife.

"Sincerely yours,

"George Abbitt, Jr."

To this letter the husband, by his attorney, L. S. Owens, replied as follows:

"April 20th, 1953.

"Mr. George F. Abbitt, Jr.,
Attorney at Law,
Appomattox, Virginia.

"Dear Sir:

"Your letter 16th instant, addressed to Richard D. Nash of Honaker, has been turned over to me for reply.

"Mr. Nash, as you may already know, is now and has been for many years past an employee of the Norfolk & Western Railroad Company, assigned to and having headquarters on the Clinch Valley Division of said road, and that before taking up residence with her mother at Pamplin, Mrs. Nash had been living with her husband here. Of her own choosing and without audible objection by Mr. Nash, Mrs. Nash established residence with her mother, as aforesaid. Over a period of several years, Mr. Nash visited his wife at Pamplin practically every two weeks, notwithstanding this was quite a burden to him due to the distance traveled and time consumed.

"Due to . . . misunderstandings with his wife over some trivial matter, Mr. Nash has not visited his wife for several months now, neither has he heard from her by letter, telephone or telegraph. Mr. Nash has not sent his wife any money during his said absence because at the time of their separation Mrs. Nash had in her possession several checks signed in blank by Mr. Nash, all of which would have been honored for a reasonable amount. It does not appear that these checks have been used.

"Mr. Nash stands ready, able and willing to provide comfortable living quarters and all necessities of life for his wife, provided she will give up her present residence and return to him here where his work is. He is even willing to provide for Mrs. Nash's mother if she too will come and live with them, although he is, of course, under no legal obligation to her.

"Finally, Mr. Nash wants to do the fair and reasonable thing by his wife provided she will come here and be a wife to him, otherwise she must assume the consequences of her refusal so to do.

"Yours very truly,

"L. S. Owens"

To this letter George F. Abbitt, Jr., replied as follows:

"April 29, 1953

"Mr. L. S. Owens
Attorney at Law
Honaker, Virginia

"Dear Mr. Owens:

"Since receipt of your letter under date of April 20th, 1953, setting out the position of Mr. Richard Nash, husband of Mrs. Carrie Davis Nash, about whom I wrote you under date of April 16th, I have further reviewed their problem with Mrs. Nash.

"Her statement to me as to what the facts are is at considerable variance with the outline of the facts as presented to you by Mr. Nash.

"Mrs. Nash desires to consider the matter a few days before making a decision as to exactly what she wishes to do.

"Therefore, after I have seen her the second time I will write you just what she plans.

"Very truly yours,
"George Abbitt, Jr."

On cross-examination the wife was asked: "In the letter of April 29, you stated that you desired to consider the matter a few days before making a decision as to exactly what you wished to do. Well, have you ever made any decision as to what you want to do? A. Well, unless Richard does better than he has been doing, I just decided I would get a divorce."

The husband testified that when the parties met at Appomattox Courthouse for the purpose of taking depositions in the case he asked his wife if she wanted to live with him. He told her that he would get someone to live with her mother, or that she could live with them in Honaker, to which she replied she would have to think about it. He, thereupon, accepted her invitation to take dinner with his wife and her mother at Pamplin. While there they discussed living together in Honaker, but his wife was still undecided what to do. He told her that he would go down to Windsor to visit friends and on his return she could tell him what she wanted to do. The next day he stopped by Pamplin *en route* to Honaker and was informed that his wife had definitely decided to continue to live with her mother in Pamplin.

The substance of the testimony is that prior to the institution of the divorce the parties had been married for twenty-six years;

during approximately twenty-one years of this period the wife, with the tacit consent of her husband, lived at her mother's home in Pamplin, Virginia, while his work has compelled him to live at other places. During the past twelve or fourteen years the husband has seen his wife approximately twenty-six times a year and then only on weekends. During most of the period the wife has been gainfully employed. The husband has repeatedly urged his wife to live with him in Honaker where he is employed. In addition, he offered to furnish a home and support her mother if she and his wife would make their home with him at the place where his work compels him to be. These offers were repeated in the letter from his attorney to the attorney for the wife and were repeated after the suit was instituted and the depositions of the wife had been taken. The wife continuously and consistently has declined to live with her husband in Honaker, and, so far as the record shows, merely because she prefers to live with her mother in Pamplin.

In *Graves* v. *Graves*, 193 Va. 659, at 661, 70 S. E. (2d) 339, we said: "While the relation of husband and wife has been modified in many respects by statute, a husband still has the right to select the place of abode and a wife must acquiesce in such selection, provided the decision of the husband is not unreasonable, arbitrary and unjust, and not used as a means of procuring a dissolution of the marital relation." *Kerr* v. *Kerr's Heirs*, 182 Va. 731, 30 S. E. (2d) 684.

The record contains no evidence tending to prove that the wife was justified in refusing to live with her husband where his employment compelled him to be. It was stated at the bar, however, that the husband did not insist upon this Court passing upon the issues raised by his cross-bill.

The decree of the chancellor granting the wife a divorce and $25.00 a week permanent alimony is hereby set aside and reversed, and a final decree dismissing the case will be entered in this Court. The husband will be ordered to pay the cost of this appeal, including $150.00 attorney fee awarded George F. Abbitt, Jr., for representing the wife in this Court.

*Reversed and final decree.*