# Richmond

## MARGARET S. GENTRY, AN INFANT v. NORRIS C. GENTRY.

January 11, 1934.

Present, All the Justices.

The opinion states the case.

*Gordon B. Ambler* and *John C. Goddin,* for the appellant.

*Thomas O. Moss* and *George B. White,* for the appellee.

GREGORY, J., delivered the opinion of the court.

Norris C. Gentry filed a bill in chancery against his wife, Margaret S. Gentry, asking for a divorce from bed and board on the grounds of desertion. Mrs. Gentry answered the bill, denied the allegation of desertion charged against her and filed a cross-bill asking that she be awarded a divorce from bed and board from her husband on the ground of his desertion. Both parties claimed the custody of their two small infant children. The decree of the trial court granted the husband a divorce from his wife on account of her desertion and granted him the custody of the two infant children for nine months in the year and granted their custody to Mrs. Gentry for three months in the year. It denied Mrs. Gentry alimony and dismissed her cross-bill. The decree is now before this court for review.

It appears from the evidence that these parties eloped and were married in Washington, D. C., on June 25, 1925. At that time Mrs. Gentry was fifteen and her husband twenty years of age. The father of Mr. Gentry accompanied them to Washington, was present when the marriage license was issued and when they were married. The mother of Mrs. Gentry, who was the surviving parent,

knew nothing of the elopement or marriage until afterwards. She then procured a warrant for her son-in-law for swearing falsely in order to procure the license, but later had the warrant dismissed. Mr. and Mrs. Gentry, soon after their marriage, returned to Richmond and lived together in the home of Mr. Russell Gentry, the father of Norris Gentry, and they continued to live there until their relations were severed on the night of January 31, 1931. Two children were born of the marriage, and they were four and one-half and two and one-half years of age, respectively, when this suit was instituted.

As is usual in such cases, a great deal of the testimony is immaterial and in stating the facts and circumstances of the final break we will only state those which we deem material and determinative.

Mr. and Mrs. Gentry lived happily together until the final separation, except that she was never satisfied to live with Mr. Gentry's parents, and no doubt living there has been responsible for a considerable part of their domestic troubles. She liked to go to dances and he did not. She would go to dances occasionally with others, to which he raised no objection, but he would not care to accompany her. She liked social functions and amusements, while he preferred to remain at home. He seemed older in his "attitude towards life than his years would denote."

In 1929, while she and her husband were visiting in Spotsylvania county, they met one John Wood Smith, and Mrs. Gentry and Smith became interested in each other. She later attended dances when he was present and for some five months before the separation they corresponded. Some of the letters from Smith fell into the hands of Mr. Gentry, and he and his wife talked about her relations with Smith. Mrs. Gentry promised to discontinue the correspondence, and so far as the record discloses she did not write any letters afterwards. Her husband, however, became suspicious.

On the night of January 31, 1931, Mrs. Gentry was invited by several married couples to a dance at Pine

Needles Camp." Mr. Gentry was also invited, but declined to go. He did not object to Mrs. Gentry going. When they arrived at the place for the dance, Mrs. Gentry found that Smith was there and they danced together. Later they went outside to the front of the building and sat in a Ford coupe car. An automobile light was shining upon the front of the Ford, and several other couples were sitting in other near-by cars. Other guests were close around, going in and out of the building and to and from the near-by automobiles.

Mr. Gentry and a Mr. White, without Mrs. Gentry's knowledge, had followed her to the dance hall and were watching her. They had parked their car in front of the Ford in which Mrs. Gentry and Smith were sitting, and it was the light from their automobile which was shining upon the Ford. A short time later Mr. Gentry and White left their car and went over to the Ford and, according to the testimony of White, found Mrs. Gentry and Smith engaged in a "necking party." This was denied by Mrs. Gentry, but she admits that her conduct was indiscreet. She maintains her innocence, however, of any immoral conduct or violation of her marriage vows upon this or upon any other occasion. Mr. Gentry was somewhat indignant about what had taken place in the Ford and finding her with Smith. He thereupon told Mrs. Gentry that she could not return to her home that night. After a few words with Smith, Mr. Gentry and White left Mrs. Gentry at the dance hall. Later Mrs. Gentry was driven by Smith to the home of Mrs. Covington, where she spent the night. The next day Mr. Gentry took Mrs. Gentry to the home of a Mr. Flippen, where he left her after telling her again that she should not return to her home.

At no time since their separation has Mr. Gentry offered to receive Mrs. Gentry back in the home. He has made no attempts to become reconciled and has steadfastly refused to live with her. When making his deposition in this suit he testified that he would not permit her to return as his wife. On the other hand, the testimony

shows clearly that Mrs. Gentry has, from time to time, tried to effect a reconciliation. Just a very short time after the breach she went to see her husband and attempted to talk to him in an endeavor to reunite, but he refused to talk to her. Later she wrote him a letter asking that he permit her to return and he refused to answer it. She had others try to intercede for the purpose of a reconciliation, but without success. These attempts were made before the suit was instituted. In her testimony she says that she still wishes to return to her husband and would do so, if he would receive her as his wife and provide a home away from his parents.

It is quite obvious that when Mrs. Gentry left for the dance on January 31, 1931, she had no intention of leaving her husband. Even after the episode in the car and the rebuke of her husband she still had no intent to desert him. She could not have returned home with him because he drove away without inviting her to go with him and, according to his testimony, without mentioning her return. Such circumstances are not sufficient to prove desertion on her part.

It was his duty to make a *bona fide* effort to effect a reconciliation before he instituted his suit for divorce, and this he admits he failed and intentionally refused to do. He seeks to excuse himself from performing his duty by disclosing Mrs. Gentry's conduct with Smith on the night of the dance. He does not charge his wife with adultery. Was her conduct on that occasion sufficient to justify and excuse him in declining to become reunited with his wife? In other words, was her conduct sufficient to constitute just cause for him to leave his wife?

From the standpoint of Mr. Gentry, it is pertinent to inquire whether or not, if it be taken as a fact that Mrs. Gentry was on the particular occasion hugging and kissing Smith, such conduct on her part was a sufficient excuse for his discontinuance of the marriage status and for the continuance of the separation without offering his wife an opportunity to return to him. Of course, if the

cause or excuse was not sufficient to justify his leaving her, then it would not justify the continuance of the separation or excuse him for his failure to offer to effect a reconciliation.

 The "just cause" for one consort leaving the other must be such a cause as would entitle the injured party to a divorce. *Towson* v. *Towson,* 126 Va. 640, 102 S. E. 48; *Crounse* v. *Crounse,* 108 Va. 108, 60 S. E. 627; *Cumming* v. *Cumming,* 127 Va. 16, 102 S. E. 572.

Our conclusion is that Mr. Gentry did not have just cause for leaving his wife. This being true, he was not excused from making a *bona fide* effort to effect a reconciliation. As we have already seen, he not only intentionally refused to make any effort or offer at all, but declined to allow her to return.

The principles governing the duty of husband and wife to attempt to effect a reconciliation are found and clearly stated in the two recent cases of *Sussman* v. *Sussman,* 158 Va. 382, 163 S. E. 69, and *Inman* v. *Inman,* 158 Va. 597, 164 S. E. 383. See, also, *Tutwiler* v. *Tutwiler,* 118 Va. 724, 88 S. E. 86, and *Markley* v. *Markley,* 145 Va. 596, 134 S. E. 536.

Under the undisputed facts in this case and the authorities cited, even though it be assumed that Mrs. Gentry was guilty of indiscreet conduct with Smith, it nevertheless was not sufficient to justify Mr. Gentry in leaving her, and he, having refused to become reconciled, is not entitled to a divorce.

It next becomes important to determine whether or not Mrs. Gentry is entitled to a divorce from Mr. Gentry under the allegations of her cross-bill. As we have seen, Mrs. Gentry made repeated efforts to become reconciled with her husband, but without success. Inasmuch as the husband was not justified in severing the marriage relation, he was not justified in refusing to permit her to return to him as his wife. This sustains her charge of desertion against him and entitles her to a divorce.

 Mrs. Gentry having shown that she is a fit and proper person to be allowed the custody of her two infant

children, custody of them is awarded her. Mr. Gentry should contribute such sums for their maintenance and support and as alimony for his wife as may be reasonable and just under all of the circumstances, and in order to properly ascertain the sums for those purposes, this cause is remanded to the trial court with direction that they be so ascertained there. It is also directed that the trial court enter an order granting Mr. Gentry permission to visit the children at such times as may be convenient. For these purposes and in the hope that the parties may eventually become reconciled, it is deemed advisable that the cause remain and continue upon the docket of the trial court for a reasonable time. The decree complained of is, therefore, reversed, and a decree here may be entered granting Mrs. Gentry a divorce *a mensa* from her husband in accordance with the prayer of her cross-bill. The relief asked for by Mr. Gentry in his bill of complaint is denied.

*Reversed and remanded.*

EPES, J., concurring.