# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## ERNEST SINGLETON HENDRY V. ISABEL BRECKENRIDGE HENDRY.

February 20, 1939.

Record No. 2020.

Present, All the Justices.

The opinion states the case.

*S. L. Walton* and *F. S. Tavenner,* for the appellant.

*Frank L. Ball* and *Walter D. Fletcher,* for the appellee.

GREGORY, J., delivered the opinion of the court.

The appellant, Dr. Ernest Hendry, appeals from a decree in which the court declined to grant him a divorce *a mensa et thoro* on the grounds of desertion as asked in his cross-bill. By the decree the appellee, Mrs. Isabel Hendry, was also refused a divorce on the grounds of cruelty, non-support and desertion but she was allowed permanent alimony of $100 per month.

In the original bill filed by Mrs. Hendry against her husband she founds her claim for a divorce from bed and board and alimony on allegations of cruelty and desertion. She charges that in the later years of their married life Dr. Hendry became abusive toward her by using boisterous language and slandering her in a cruel and brutal manner, without provocation or having just cause therefor, and that these acts on his part have seriously impaired her health. She alleges that during their entire married life Dr. Hendry was parsimonious and has failed to support her properly and adequately and that she has been dependent on members of her family to supply her with necessities, such as clothing. Complaint is made that he wilfully and deliberately deserted and abandoned her during the month of September,

1935. Mrs. Hendry declares that her husband failed to care for her health by neglecting her and being utterly indifferent toward her in regard to medical and surgical attention which she needed on numerous occasions, and that he refused to alleviate her suffering. She alleges that this cruel and inhumane treatment of her by Dr. Hendry forced her to leave him in October, 1935, and to institute divorce proceedings.

Dr. Hendry filed his answer in which he denied the charges of cruelty. He states that he had shown the plaintiff nothing but kindness and forbearance, and that if she would return to his home he would treat her with due consideration and support her to the best of his ability. Dr. Hendry confutes her charge of non-support. He says that she insisted that he purchase a country home in Virginia and that he bought the home for $58,000 against his better judgment and thereby greatly burdened himself with a debt too large to carry. He avers that Mrs. Hendry wilfully deserted him without just cause, and that she took away from his home at the same time many personal effects belonging to him.

About three months later, no reconciliation having taken place, the appellant filed a cross-bill in which he asks that he be granted a divorce *a mensa et thoro* on the grounds of unjustifiable desertion on her part and that this divorce be merged into a decree *a vinculo*, dissolving all marital ties at the expiration of the proper statutory period for the granting of such an order.

The lower court, as already indicated, entered a decree denying a divorce to either party but requiring Dr. Hendry to pay the sum of $100 per month to Mrs. Hendry for her maintenance. It is from this decree that the appellant, Dr. Hendry, has appealed to this court. He now asks that he be granted a divorce on the grounds of desertion and that it be made absolute because the two year statutory period has elapsed, and if this is denied he asks that the alimony allowed which he claims is excessive be discontinued because of his wife's refusal to become reconciled.

There is a great mass of documentary evidence, comprising 284 pages, which is needlessly printed in the record. Voluminous depositions were also taken which bore upon non-essential and incidental matters and which were not necessary to a correct determination of the cause. Code, section 6344, provides that if part of a record is unnecessarily copied, the cost of printing the same, in the discretion of the appellate court, shall be paid by the party at whose instance such copying was done. We intend to vitalize section 6344 by enforcing its provisions. In this case, however, we must content ourselves by simply denouncing the practice of unnecessary printing, because the appellant here who was partly responsible for the useless printing must bear the expense. The General Assembly has made ample provisions for parties to bring before this court the original exhibits filed either with the pleadings or the evidence, without incurring the cost of copying or printing. See Code, section 6357, as amended by the Acts of 1938, ch. 76.

We must decide which of the parties was at fault in bringing about the marital difficulties which eventuated in their final separation. The trial court has found that both were at fault and has denied a divorce to either of them, but under section 5111 of the Code, as amended, the court has ordered the husband to pay his wife as alimony $100 per month. Neither of the parties is satisfied with the decree. The husband says the court should have granted him a divorce upon his cross-bill and that having been denied he should not be required to pay his wife the alimony, and, finally, that the alimony is excessive. The wife by cross-error says that she should have a divorce. Between them and their respective and conflicting positions we must determine their rights and to do so we must look to the evidence. It is unsatisfactory, as is so often the case, and it will not be profitable to refer to all of it.

The appellant is a physician of standing and prominence, practicing his profession in the city of Washington. He graduated from Johns Hopkins in 1911 and later completed additional training in diseases of the stomach. His interne-

ship was served at the Union Memorial Hospital and there he met the appellee who was then a nurse in the hospital. In 1916 she severed her connection with the hospital and returned to the home of her mother in Baltimore where she remained for two years. At the end of that period she and the appellant were married. He was a struggling young physician thirty-seven years of age and she an experienced trained nurse of forty years.

They removed to Washington where he opened an office. At first his practice was small and his income meager. In fact, they were greatly aided financially and otherwise by appellee's sister, Mrs. DiGiorgio, who seems to have been a kindly and thoughtful woman of means. The appellee, during the lean years, was constantly alert and successful in her efforts to advance and improve the practice of the doctor. Finally they arrived at a position where the appellant had an extensive and paying practice and a comfortable home. As the appellant's practice enlarged, they raised their standard of living. This resulted in the purchase on credit of a $58,000 home in Virginia, a short distance from Washington where they lived well. Dr. Hendry kept a staff of three servants and he and Mrs. Hendry enjoyed most of the desirable worldly goods. There were no children born of this marriage.

Mrs. Hendry was in ill health during her married life. She had extensive medical attention and a number of surgical operations. She received the best services the profession could afford in Washington and Baltimore and at little 'or no expense, because her husband was a doctor.

The appellant was not in good health in the latter days of their married life and he from time to time required medical attention.

From the testimony it may be concluded that as they grew older and their illnesses became more serious, their affections for each other waned, and their conduct was inimical to a pleasant married relationship. In July, 1935, the appellant accepted his brother's invitation to spend his vacation in Maine. He was a sick man when he went to Maine

and a short time after his arrival he received a letter from a Washington lawyer in which it was stated that he had been employed by Mrs. Hendry to adjust the domestic difficulties which had arisen between them. This seems to have been the event which entirely disrupted the marital relation, for afterwards they never lived together as man and wife.

Prior to July, 1935, they had quarreled. Both were petulant and impatient but no physical violence of any kind made its appearance. After the purchase of the Virginia home and they had incurred the obligations which were necessary to keep it up, financial troubles appeared. His practice did not justify such a fine home and the attendant expense. The appellant carried his troubles to his brothers and sister and received help from them. The appellee found comfort in her sisters who were entirely well-meaning.

The appellant provided well for his wife. The testimony shows that she had ample funds for her purposes. She had access to his bank account and the authority to draw checks against it. In addition she had charge accounts in Baltimore and Washington.

When appellant returned from his vacation in Maine in 1935, he and Mrs. Hendry were estranged and scarcely spoke to each other. Finally in the following October when appellant was not at home Mrs. Hendry had a truck brought to the home and removed a substantial portion of the furniture to Baltimore where she then went to reside with her sister. On October 22, 1935, the present suit was instituted by her.

Mrs. Hendry testifies that she was forced to leave the home in October, 1935, because the appellant was irritable and abusive and refused to procure the necessary fuel to heat the home. He denies the charge. The record is replete with charges and countercharges. Much bitterness is exhibited and each has maligned the other. Appellant says that for several years prior to the time Mrs. Hendry left the home in October they had not lived as man and wife. During that time while they lived in the same house he stated that they occupied separate rooms. This is denied by Mrs. Hendry.

The evidence fairly considered discloses that Mrs. Hendry in July, 1935, had a fixed intention to separate from her husband. She went to his office while he was in Maine and removed articles of furniture. She authorized her lawyer to write the appellant the letter we have previously mentioned, calling upon him for an adjustment of the domestic troubles in default of which further and more serious action was threatened. When he returned from Maine the occasion did not give rise to much enthusiasm on the part of either of them. Conditions grew worse and finally Mrs. Hendry made the move. She left the home in October thereby carrying into effect the intention she had formulated in the previous July. She carried with her many articles of furniture. Did she have just cause for leaving, and has the appellant made an effort in good faith to have her return?

■ We have held that one spouse is not justified in leaving the other unless the conduct of the wrongdoer could be made the foundation of a judicial proceeding for divorce. Nothing short of such conduct will justify a wilful separation or a continuance of it. *Towson* v. *Towson,* 126 Va. 640, 102 S. E. 48; *Gentry* v. *Gentry,* 161 Va. 786, 172 S. E. 157.

■ When we examine the conduct of Dr. Hendry prior to the time Mrs. Hendry left him we observe that he was cold and indifferent. At times he was unkind. But all that may be urged in criticism of him may be directed at Mrs. Hendry. They both made married life very disagreeable but their conduct was not just cause in a legal sense for one to desert the other. Mrs. Hendry was not legally justified in deserting her husband. There is not sufficient evidence of cruelty on his part to justify her in leaving him.

■ The principles relating to the duty of a husband to attempt, in good faith, to effect a reconciliation with his wife who has left him are set forth in *Sussman* v. *Sussman,* 158 Va. 382, 163 S. E. 69; *Inman* v. *Inman,* 158 Va. 597, 164 S. E. 383. They need not be restated here.* We think

*By Acts of 1938, ch. 242, page 382, it is no longer necessary to allege and prove an offer of reconciliation where the divorce is sought on the grounds of abandonment or desertion.

that Dr. Hendry made a *bona fide* effort to bring about a reconciliation after his wife left him. Before he filed his answer he instructed his counsel to write counsel for Mrs. Hendry. This was done and the following excerpts are taken from the letter:

"He has authorized me to state that if she will return to his home he will endeavor to support her to the best of his ability, considering the many demands upon his income. * * *

"He is not anxious to answer all of these accusations and bring to light many causes of differences that have been between them in the past, but is willing, if she will return to his home, to treat her considerately and to support her in the best manner that his means will allow. * * *

"If Mrs. Hendry will not return to his home he will be forced to allow the home in Arlington county to be sold in order to meet his debts. If she does return, he will use his utmost endeavor, not only to support her, but to meet his obligations.

"I am submitting this to you so that you may take the matter up with your client before we have an interview in regard to the question of alimony and suit money."

Knowledge of the contents of this letter was brought home to Mrs. Hendry. Counsel for Dr. Hendry, by the latter's direction, again requested in Mrs. Hendry's presence that she return and become reconciled, when the motion for temporary allowances was made. It is manifest from the record that Dr. Hendry was willing to try to live with his wife again, but that she gave no indication she was willing to try to resume their married life. Later in the following February he filed his cross-bill asking for a divorce from his wife on account of her desertion. We think he is entitled to a divorce *a mensa et thoro*. Such a decree is now ordered to be entered by this court. The decree complained of is

*Reversed.*