# Richmond

WILLIAM ELIJAH WILLIAMS v. CLARA BELLE WILLIAMS.

November 22, 1948.

Record No. 3394.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

*James G. Martin & Sons* and *Fred W. Richter*, for the appellant.

*Broudy & Broudy*, for the appellee.

Miller, J., delivered the opinion of the court.

Appellant, William Elijah Williams, and appellee, Clara Belle Williams, are husband and wife. They were married September 14, 1936, and lived together until August 7 or 8, 1947. There is conflict as to which day they actually separated. No children were born of this union. He is now 51 years of age and she 57.

On or about the 19th day of August, 1947, appellee instituted suit against appellant for separate maintenance and support. Process was then issued and her bill of complaint filed at first September rules.

In general terms, she charges that appellant "was guilty of cruelty and constructive desertion * * *." She then more specifically says that he "has associated on intimate terms with a certain married woman, named Bessie Mitchell, who is living separate and apart from her husband" and continually visited her in the day and at night, "kept secret and clandestine engagements with her * * *," and that appellee had been subjected to insults and indignities by appellant and Bessie Mitchell. She further alleged that this conduct forced her to have him and Bessie Mitchell "arrested on charges of disorderly conduct, and disrupting marital relations," and upon trial before the Juvenile and Domestic Relations Court on August 4, 1947, they were ordered to cease their association with each other and the cause was continued on the docket.

It is also alleged that appellant threatened to divorce appellee and leave the city, denied and refused sexual intercourse, and that this accumulated misconduct and ill-treatment impaired appellee's health and forced her to leave the home of appellant on August 7, 1947. She concludes by saying she is without means and wholly dependent upon appellant for support.

Appellant filed an answer and cross-bill in which he denied all misconduct. He admitted his acquaintance with

Bessie Mitchell and that he had visited her at times, but insisted that there had been no improper relations or association with her.

By way of affirmative allegations, he says that though appellee had him arrested on July 26, 1947, upon charges of disorderly conduct and breach of marital relations, she continually, from that day until the trial upon the warrant on August 4, 1947, and thereafter until August 8th, lived with him, on which latter date she wilfully deserted him. He prays that her bill for maintenance and support be dismissed and a divorce from bed and board awarded him.

On the issues thus presented, the court tried the case on depositions. A decree was entered dismissing appellant's cross-bill, ordering that the parties live separate and apart without divorce, and awarding to appellee support and maintenance of $20 per week. The decree also directs that appellant pay the costs and $250 as an attorney's fee.

Though appellee alleges in her bill that appellant's association with Bessie Mitchell was improper and a source of such humiliation, worry and concern as to affect her health and well being, there is no charge of adultery.

A recital of the testimony at length would serve no good purpose. It is sufficient to say that appellee, by her testimony duly corroborated, fairly establishes that appellant's attention to and interest in Bessie Mitchell was unjustified and more than platonic—in fact, it was humiliating and gave to appellee reasonable grounds of complaint.

Appellee testified in support of the other allegations in her bill that appellant had threatened to secure a divorce and leave the vicinity, and denied her the privilege of sexual intercourse and was not "as pleasant as he should be at times." She also stated that after the trial on August 4, 1947, he asserted that he would not stop associating with Bessie Mitchell. However, it is significant that there is no allegation or evidence that appellant visited or associated with her after issuance of the warrant on July 26, 1947.

In her testimony, appellee assigns as the actual and culminating reason for her departure from her home the

fact that her husband had over a long period of time refused the privilege of sexual intercourse.

Appellant emphatically denies that he threatened his wife with divorce or refused her normal sexual relations. It is also made clear by his testimony and not denied, that after issuance of the warrant against him on July 26, 1947, these two parties continued to live together at their home and actually occupied the same bed until her departure on August 7th or 8th. In fact, they occupied the same bed on the night of July 26th until he was arrested about 4:00 o'clock a. m. He secured bail and they thereafter continued to live in the same home and slept together until the trial of August 4th and thereafter until she left on August 7th or 8th.

It therefore appears from the testimony that the marital relations were not seriously disrupted but that these parties continued living together on intimate terms until she finally left their home. This is not denied by appellee, in fact she says that on the day of and after the trial of August 4th they "got along just fine."

The evidence further shows that after the final separation of the parties and before the evidence was taken in this cause on September 30, 1947, on two or more occasions he asked appellee to return but these requests were of no avail.

The above summarized testimony unquestionably proves that subsequent to any misconduct on the part of appellant, these parties lived together as husband and wife for a period of ten days or more. Appellee's chief grievance was the fact of her husband's association with Bessie Mitchell. The only evidence relied on to show that appellant's conduct subsequent to July 26, 1947, has not been wholly proper is the uncorroborated statement of appellee that he rather boastfully said "the judge could not stop him * * *."

If all of the conflicts between appellee's and appellant's testimony be resolved in her favor, the evidence would establish justification for her departure from the home on July 26, 1947. But such a course was not then adopted.

She elected to secure a warrant against the two offenders and, having done so, continued to live with her husband until the trial on August 4th and then for three or four days thereafter.

That a wife may in a proper case permanently leave her husband and recover separate maintenance without suing for a divorce has been settled law in Virginia since the decision of *Heflin* v. *Heflin*, 177 Va. 385, 14 S. E. (2d) 317, 141 A. L. R. 391. See also, *White* v. *White*, 181 Va. 162, 24 S. E. (2d) 448.

Her right to secure separate maintenance is based upon the common-law duty of a husband to support his unoffending spouse. It does not find its source in legislative enactment but antedates and is not dependent upon our divorce statutes for its existence. Therefore, if the husband's mistreatment of his wife has rendered the marital status unendurable—that is, if his conduct amounts to cruelty or constructive desertion—her right to depart and maintain an action for separate maintenance and support is not now open to question.

"The conduct of the husband toward the wife may be of such a character as to justify her in going away. In such a case he is considered as leaving her. In other words he is guilty of constructive desertion of the wife. There is such a case where he is guilty of such ill usage as endangers her life and limb, or of personal violence, although the life or the health of the wife is not thus endangered. So a husband may be said to desert his wife where the home provided for her and the mode of living are unreasonably and grossly unfit.

"Again she may be justified where she is subjected to treatment which affects her mind to such a degree as to destroy health or endanger life." Keezer, Marriage and Divorce, 3rd Ed., sec. 278, p. 342.

"The wife may be decreed separate maintenance where she is living separate and apart from the husband without fault on her part. Also she may be awarded an allowance for separate maintenance where she has left the

husband, and is living separate and apart from him, for a cause legally justifying her in doing so, as where the husband's wrongful acts or conduct render living with him intolerable and unendurable, or where she is justified in leaving him by reason of his cruelty, ill-treatment, threats of bodily harm, adultery, communication of venereal disease to her, or unjust and untrue accusations of infidelity, or where he induces her by fraud and deceit to leave him and then refuses to permit her to return." 42 C. J. S., Husband and Wife, sec. 611, p. 203.

As the divorce laws of this State embody equitable principles, a wife should not be allowed to claim the right to support if she has been guilty of such misconduct as to constitute cause for divorce. Nor in equity and good conscience is she entitled to separate maintenance and support if she has permanently left her husband for cause legally insufficient to be made the basis for a judicial proceeding for divorce. *Hendry* v. *Hendry*, 172 Va. 368, 1 S. E. (2d) 340.

She cannot elect to depart from her husband's home and live separately from him and so destroy the matrimonial relation, and yet invoke the aid of equity to secure maintenance and support, unless such action on her part is based on conduct which would be grounds for release from the matrimonial status. To hold otherwise would relieve a wife of her matrimonial obligations and encourage the destruction of the marital relation where there were actually no grounds for divorce.

This brings us to a consideration of whether appellee was justified in her action on August 7th or 8th when she, with intent to permanently separate from her husband, actually moved out of his home and took up her abode in another part of the city.

Though her right to leave her husband's home and maintain her suit for separate maintenance exists in a proper case, it is equally true that she may, by condonation, bar such right unless and until her husband shall offend. This relinquishment of her right of action by condonation is

generally as well settled as her privilege in the first instance to maintain the suit.

"As in divorce, the condonation of matrimonial offenses may defeat a suit based on such offenses, so in a suit for separation or alimony by the wife, her forgiveness of the offenses complained of may bar her action. But such forgiveness is not to be considered if other offenses have followed until the wrong becomes unbearable." Keezer, Marriage and Divorce, sec. 282, p. 356.

"The right to an allowance for separate maintenance ceases on a resumption of cohabitation or other condonation of the offense giving rise to the allowance, unless such resumption is under the restraint of fear or force of circumstances; but the condonation is conditional, and a repetition of the conduct complained of will revive the condoned offense, and, on a subsequent separation after reconciliation, the wife may institute or prosecute a suit for separate maintenance." 42 C. J. S., Husband and Wife, sec. 612, p. 210.

The conflicting testimony in this case, when resolved in favor of appellee, might be said to have established her right to maintain this action were there no evidence of condonation of appellant's transgressions. Yet, in our opinion, the actual resumption and continuation of apparently normal matrimonial relations, in the manner and for the period disclosed by the evidence, refutes her claim of continued denial of sexual intercourse and measures up to such definite proof of forgiveness of appellant's previous misconduct as to render her deliberate departure thereafter unjustified. That, along with appellee's definite and persistent refusal to return though requested by him to do so, constitutes desertion on her part.

We are of opinion that the finding in favor of appellee and the award of separate maintenance and support to her must be reversed and the cause remanded with direction to award appellant a divorce from bed and board.

Appellee having prayed that compensation be allowed to her counsel for services in this court and it appearing appro-

priate that such be done, a fee of $150 is allowed which appellant will be ordered to pay, along with the other costs incident to this appeal.

*Reversed and remanded.*