## Staunton

### Henry F. Stolfi v. Maxine M. Stolfi.

August 31, 1962.

Record No. 5452.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, and Carrico, JJ.

*Eldridge K. Hayes* (*George M. Giammittorio*, on brief), for the appellant.

No brief or argument for the appellee.

Spratley, J., delivered the opinion of the court.

This cause was instituted on February 28, 1961, by Henry F. Stolfi, appellant, against his wife, Maxine M. Stolfi, for a divorce *a mensa et thoro* on the ground of wilful desertion. The wife filed an answer denying the desertion, and a cross-bill charging cruelty on

the part of her husband and praying that a divorce *a mensa et thoro* be granted her. She asked for the custody of the two children of the marriage, permanent alimony for herself, and an allowance for the maintenance and support of the children.

By stipulation of the parties, William P. Woolls, Jr., was appointed Judge pro tempore for the trial of the cause. Virginia Code, 1950, § 17-9. The evidence was heard *ore tenus*, and on July 28, 1961, a decree was entered denying a divorce to either party, awarding custody of the two children to Mrs. Stolfi, with the right of the father to visit with them at all reasonable times and places; and ordering the appellant to pay $75.00 monthly for the support and maintenance of each of the said children, the sum of $75.00 a month for the support and maintenance of Mrs. Stolfi, and payment of her counsel fees and costs of the proceeding.

Appellant, Stolfi, assigns error only to so much of the decree as denies him a divorce and requires him to make monthly payments for the support and maintenance of Mrs. Stolfi. Mrs. Stolfi assigns no cross-error, and has filed no brief in opposition to the granting of the relief sought by appellant. Thus, we need only consider error assigned by the appellant.

The parties hereto were married in San Francisco, California, on March 2, 1951. He was then a Commander in the United States Coast Guard, in which he had served twenty-four years. He was a widower, and had a son by his first marriage, now twenty-nine years of age, who has never lived with the parties. Mrs. Stolfi was twenty-five years of age. She had been previously married and divorced, and had one son, Theodore, now about fifteen or sixteen years of age, who was born of her first marriage.

Stolfi and his wife continued to live in California until he was transferred to New York. Subsequently, he was transferred to Juneau, Alaska, where he and his wife remained until the summer of 1958, when they moved to Alexandria, Virginia, where they were residing at the time of the separation hereinafter mentioned. Two children were born of their marriage, Bradley F., seven years of age, and Gina, aged two.

The first years of their married life appear to have been normal and happy. Later friction arose between them with reference to Theodore, Mrs. Stolfi's son by her previous marriage. Mrs. Stolfi thought that her husband was too strict with this child, who, by agreement, lived with them. Being unable to reach an amicable agreement with reference to the upbringing of this child, she sent him, in 1956, to

her parents in California, without giving any notice or explanation to her husband. Thereafter, she visited her son and mother at Christmas in 1956 and 1958, and her son spent the summer months of 1956 in her home in Alexandria. She several times expressed the desire, early in 1960, to go to California for a delayed visit with her son and mother. This caused considerable discussion and disagreement between her and her husband.

Stolfi testified that in the winter and spring of both 1959 and 1960, they had otherwise no differences of any magnitude, and only a few minor disputes over her failure to prepare his meals. Because of the imminence of his retirement from the Coast Guard and his desire to obtain work thereafter, he attended night school five times a week and spent much of his time studying, preparing to go to Purdue University to obtain training as an instructor in mathematics. His testimony that he and his wife lived a normal and more or less harmonious life was corroborated by the testimony of two disinterested witnesses, his next door neighbor, Mrs. Brunell S. Whitledge, and Henry F. Ross, Colonel in the United States Army, and also by the sister of Stolfi. These three witnesses said that Mrs. Stolfi was well provided for, that, so far as they knew, she expressed no feelings of dissatisfaction or discontent, and appeared to be happy. Stolfi denied that he ever struck or mistreated his wife or her son, Theodore.

On May 6, 1960, Stolfi came home from night school about 8:30 p. m., found his house dark, turned on the lights, found no one in the house, and came upon a half sheet of paper, on the dining room table, containing a message addressed to him, written by Mrs. Stolfi, which read as follows:

"By this time we will be in San Francisco. You will get a letter tomorrow about noon. Maxine."

He said the situation was a complete surprise; and that he had no warning nor previous discussion whatever that his wife would make her departure in this way and take with her their two children. The next day about noon he received the letter mentioned in the note of his wife. In this letter she said that he had been cruel and indifferent to her and that she was going to California to have a vacation and visit her son and her mother. She expressed the hope that he would give more attention and consideration to her and the children, and asked that he advise her if he agreed to do so.

He later received another letter dated May 21, 1960, in which she said it was "most obvious" to her that he had no intention of answering her previous letter. Said she: "As a result—I can think

of no reason what-so-ever to continue this charade we have been living for so long. * * * I have no intention Hank, of returning to the abuse—both mental and physical—that you have inflicted upon me during the nine years of marriage to you." Then followed a recital of her grievances and the alleged abuse of her son, Theodore. She also wrote: "I found a house that is to be vacated in a few weeks. It is in this area. I am looking forward to make a home for my *three* children—which after all is the most natural thing in the world for a mother to do—I have been separated from my Teddy far too long as it is. * * * I'll expect you to send all the furniture, household effects, my clothing, children's clothing, etc., here for our use." She then said if she received no answer by June 1st, she would be forced to go to the "Coast Guard in San Francisco and let them handle the whole affair;" that she knew what she was entitled to; and if necessary would consult counsel. In effect, she told him that she had no intention to return, and wanted all the furniture and the clothing of herself and children for use in California.

Stolfi answered neither the note nor the letters; but did comply with the request to ship the clothes. He said he was too badly shocked and embarrassed to write to her, and thought that "she was trying to build a case for herself" by charging him with misconduct of which he was not guilty. Prior to her departure, Mrs. Stolfi had forwarded to California two cardboard boxes of clothes for herself and children, which she said were for a summer visit. Mrs. Stolfi also sent her husband two bills for dental service for herself without any accompanying note. He paid those two bills, and also other bills personally made by Mrs. Stolfi amounting to $138.00.

On June 10, 1960, a month and four days after her departure, Mrs. Stolfi wrote to the Commandant of the Coast Guard at Washington, D. C., informing him that "For good reason and on the advice of counsel, I felt it necessary to come to California for an indeterminate period of time;" that her husband had not acknowledged her letters, and had not contributed to her support since her arrival in California. She requested that the maximum support set forth in the "Personnel Manual" of the Coast Guard be provided for her. Asked her reason for the letter, she said, "I was getting rather desperate. I didn't know what to return to if I did want to come."

Stolfi said that the letter to the Commandant of the Coast Guard was very embarrassing to him personally and was a blot on his record, probably interfering with his promotion in rank. He was not required to make an allotment to his wife; but did send to her in California his

check for $300.00 monthly beginning July 1, 1960, and ending with a check on February 1, 1961, the date of his retirement. Thereafter, he sent to her monthly a check for $150.00 for the support and maintenance of his children. He said he had great love and affection for his two children, and that he was willing to provide maintenance and support for them. He has already made them and his other child beneficiaries of a considerable amount of insurance upon his life.

Mrs. Whitledge, who lived next door to the parties in Alexandria for two years, said that she and the Stolfis visited back and forth, had cocktails and meals together, borrowed small items of food from each other, and were very good friends; that Stolfi and his wife "appeared very congenial;" that they had a home nicely furnished, a good automobile, and lived as well as anyone else in a very good area of the city. She further said that Mrs. Stolfi told her a few days before May 6, 1960, that she was leaving Alexandria and was not going to return, and that on May 6, having heard that Mrs. Stolfi was leaving, being satisfied that the latter meant what she said, she called an airport in Washington, D. C., and bid Mrs. Stolfi a "final good-by." Mrs. Stolfi denies that she told Mrs. Whitledge that she was leaving her home.

Colonel Ross said he had known Mr. and Mrs. Stolfi since July, 1957, as neighbors and friends, having lived in an apartment adjacent to them, first in Alaska, and then, for two years, near them in Alexandria; that they frequently visited each other's homes; and that Stolfi supported his wife in keeping with his status as an officer and that the two apparently lived in a "normal marriage situation." He further said that Mrs. Stolfi had never complained to him, or to anyone in his presence, that she had been mistreated by her husband.

When Mrs. Stolfi left for California, she purchased a round-trip ticket by air. She took with her money and securities amounting to $2,000.00 or $3,000.00. She says it was near $2,000.00. Her husband claims it was about $3,000.00. This constituted all the money which the couple had in their joint bank account, contributed wholly by her husband, all the money which she had in her personal savings account, savings bonds in their joint names of the face value of $800.00, and about $40.00 in cash in a strong box in their home.

It further appeared that Mrs. Stolfi had consulted an attorney at law prior to her departure, and the reason she gave was, "I wanted to go home and I wanted to take my children with me, and I wanted to be assured that he could do nothing to take them away from me." Asked why she had, for the first time, sent registered letters to her

husband, she replied: "I was just trying to protect myself, the same as the reason I went to consult a lawyer to protect myself against his taking the children, for the same reason."

Stolfi said that while living in Alexandria about two and one-half years prior to May, 1960, he had made available to his wife a joint checking account in which was kept between $500.00 and $1,000.00; that twice a month he gave her approximately $200.00 to pay for food and clothing, and $40.00 for her personal expenses; that he paid the rent in addition; and that she was given a sufficient personal allowance to go to a beauty parlor quite often, and he never questioned her expenditures.

On the other hand, Mrs. Stolfi said her husband was a man of violent temper, used profane language before her and the children, but never in the presence of their friends and relatives. She complained that he struck her twice, and that one of those occasions was before the birth of their first child. She said that her relationship with her husband had become strained by his conduct and neglect of her, and that she, on her own initiative, moved out of their bedroom and slept elsewhere. She complained of his schedule of work and school studies, and the effect which they had on her social life and his attention to her. She admitted that he gave her $80.00 each month for personal needs, to do with as she pleased, and that he paid their rent and satisfied the household expenses, in addition to any bills which she may have incurred.

The conduct of Mrs. Stolfi, her departure, her protracted absence, her letters, and her testimony plainly showed that she voluntarily and wilfully left her home with the intention to permanently break off marital relations with her husband. All this she did without considering the affection of her husband for the children and the provisions he had made for her comfort and enjoyment. She has shown no legal justification for her abandonment of her husband, and no valid excuse for her failure to return to him. There is no evidence, save that of Mrs. Stolfi, that she was subjected to cruelty by her husband. She is, therefore, not entitled to a divorce.

We have repeatedly held that one spouse is not justified in leaving the other unless the conduct of the other is sufficient to establish the foundation of a judicial proceeding for divorce. *Towson* v. *Towson*, 126 Va. 640, 655, 102 S. E. 48; *Gentry* v. *Gentry*, 161 Va. 786, 791, 172 S. E. 157; *Hendry* v. *Hendry*, 172 Va. 368, 372, 1 S. E. 2d 340; *Kerr* v. *Kerr*, 182 Va. 731, 735, 30 S. E. 2d 684; *Edwards* v. *Cuthbert*,

184 Va. 502, 507, 36 S. E. 2d 1; *Williams* v. *Williams*, 188 Va. 543, 50 S. E. 2d 277.

The law does not permit courts to sever marriage bonds merely because husband and wife, through lack of patience, uncongenial natures and unruly dispositions cannot live together harmoniously. A wife cannot elect to leave her husband's home and live separately from him and so destroy the matrimonial relationship and then expect the courts to direct him to pay for her maintenance and support, unless she can show such conduct on his part to justify her relief from the matrimonial status. *Harris* v. *Harris*, 31 Gratt. (72 Va.) 13, 29; *Butler* v. *Butler*, 145 Va. 85, 88, 133 S. E. 756; *Montgomery* v. *Montgomery*, 183 Va. 96, 101, 31 S. E. 2d 284.

Aware of the weight which should be given to the finding of a trial court based on oral testimony, we think that the refusal to grant appellant, the husband, a divorce *a mensa et thoro* was plainly wrong. Code of Virginia, 1950, § 8-491. Consequently, the court also erred in requiring him to provide funds for the maintenance and support of Mrs. Stolfi.

The evidence and circumstances establish the right of the husband to a divorce, and refute the contentions of his wife. They show that, without notice to Stolfi, his wife made plans to leave him and go to the home of her mother and son in California. She shipped in advance some of the clothing of herself and children. She consulted counsel, and told a friend and neighbor that she was leaving her home. She took with her the two young children, Bradley F. and Gina. She took into her possession a considerable sum of money and bonds belonging to both parties. She departed while her husband was away from home at work. She deliberately wrote a short note, telling her husband she had left for San Francisco. She sent him a typewritten letter, dated the day of her departure, setting out her views and criticizing him, mailing the letter so as to reach him after she had departed. She wrote him another letter, in which she sought to make him admit that he was the wrongdoer, and she the innocent person. She offered terms in her letters, which she should have known were unacceptable to her husband. She embarrassed him by appealing to his superior officer for an allotment when she already had funds in her possession. She later requested the shipment of all of the clothing of herself and children. She did not return to Alexandria, Virginia, until she came to testify in this proceeding, thirteen months after her departure.

For the reasons stated, we affirm that part of the decree which

denied Mrs. Stolfi a divorce and that part which ordered him to pay $75.00 monthly for the support and maintenance of each of his two infant children. We reverse and vacate that part which denied a divorce to the husband and required him to pay $75.00 monthly to Mrs. Stolfi for maintenance and support. A decree of divorce *a mensa et thoro* is hereby awarded the appellant, Henry F. Stolfi, and the case is remanded to the trial court for further hearing and decision on the question of a divorce *a vinculo* should proper proceedings and evidence be produced.

*Affirmed in part; reversed in part; and remanded.*