**Salem**

BENJAMIN CHRISTIAN ZINKHAN

v.

LINDA PALMER ZINKHAN

No. 0817-85

Decided April 15, 1986

202

COUNSEL

Frankie C. Coyner, for appellant.

Alvin B. Marks, Jr. (Poindexter, Burns, Marks & Massie, on brief), for appellee.

OPINION

**COLE, J.**—The issues raised in this appeal are: (1) whether the chancellor committed error when he failed to grant appellant, Benjamin Christian Zinkhan (husband), a divorce on the grounds of desertion; and (2) whether he committed error when he awarded spousal support to the appellee, Linda Palmer Zinkhan (wife).

On July 25, 1983, husband filed a bill of complaint against wife alleging that she deserted him without just cause on September 6, 1982. He asked the court to award him a divorce from bed and board and to award him a final decree of divorce from the bond of matrimony upon expiration of the statutory period provided in Code § 20-91(6).

Wife filed an answer denying that she had deserted husband. She also filed a cross-bill alleging that on September 6, 1982, husband was guilty of constructive desertion, causing her to leave their home. She asked that she be awarded a divorce from bed an board from husband on the ground of constructive desertion; that she be awarded a final divorce from the bond of matrimony upon elapse of the statutory period of time; that she be awarded custody of their child, Laura D. Zinkhan, and maintenance and support for the child; that she be awarded spousal support, attorney's fees and court costs; and that the court make an equitable distribution of the parties' marital property.

On November 1, 1984, the chancellor entered a decree granting a final divorce from the bond of matrimony to husband on the ground that the parties had lived separate and apart without any cohabitation and without interruption for one year pursuant to Code § 20-91(9)(a). In addition to the usual jurisdictional findings of fact, the court found that neither party had sustained the burden of proof to establish grounds of divorce against the other, but made no adjudication with respect to its finding that neither party was guilty of fault that would entitle the other to a divorce. Instead, pursuant to an agreement between the parties, the cause was continued on the court's docket for further consideration of the issues in accordance with Code §§ 20-107.1, 20-107.2 and 20-107.3. We interpret this action by the trial court as an express reservation of all of the issues that could arise under the specified code sections, including fault and spousal support, since under both Code §§ 20-107.1 and 20-107.3, fault is a consideration. *Thomasson* v. *Thomasson,* 225 Va. 394, 397 n.1, 302 S.E.2d 63, 65 n.1 (1983); *Gagliano* v. *Gagliano,* 215 Va. 447, 452, 211 S.E.2d 62, 66 (1975); *Losyk* v. *Losyk,* 212 Va. 220, 222-23, 183 S.E.2d 135, 137 (1971); *D'Auria* v. *D'Auria,* 1 Va. App. 455, 460, 340 S.E.2d 164, 167 (1986).

Additional evidence was presented to the court upon the financial issues remaining in the case and on May 24, 1985, the court entered a final decree in the cause. The court settled the question of marital property, granted custody of the child to wife and ordered husband to pay child support. These rulings are not contested in this appeal. The court ordered husband to pay to wife spousal support in the amount of $50 per week and whether wife is entitled to support is the dominant issue raised on appeal.

The parties were married on September 4, 1972. They had a child that was stillborn on October 1, 1974, and their present child, Laura D. Zinkhan, was born on May 26, 1979. The death of the first child was a traumatic event for both parents and was particularly upsetting and disturbing to wife. Laura was born in 1979, and husband states that the trouble in the marriage commenced after the birth of the child. He also contends that his wife's mother was spending the winter months with them and took over the home after the birth of the child. He claims that when he would come home from work, invariably his wife would be at her mother's home, which was located nearby. Due to the conflict with

the mother-in-law, the parties separated in June of 1981, when wife moved from the family home into her mother's home. The parties reconciled in October of 1981, when wife agreed to return upon the condition that the home, which husband owned before the marriage, be placed in their joint names. This was done.

Husband contends that conditions did not improve after the reconciliation and that "there wasn't no room for a man in her life but her mother and the child." Husband further contends that for several months prior to their separation on September 6, 1982, she was spending six nights a week at her mother's house and one at home. On September 6, 1982, while husband was at work, wife moved her belongings out of the home and moved to the home of her mother.

Husband's testimony was corroborated by several witnesses who testified that they observed nothing unusual in the Zinkhan household; that they were never seen fighting; that they never saw any excessive drinking; that no difficulties were observed prior to the time that wife moved out of the home; that the Zinkhans were good neighbors; that neither did anything to embarrass the other; and that they observed nothing that would indicate that husband neglected wife or failed to provide for his wife and child.

Wife testified that her mother spent winters in their home, with the agreement of husband, because of inadequate heating in the mother's home. Wife's complaints against husband centered around three areas: (1) he wanted sex too frequently; (2) he went fishing too frequently; and (3) he "hammered" on her, asking her to leave the home.

While both parties complained about the frequency of sex, the evidence does not suggest anything approaching an assault; all sexual relations were consensual. Wife complained because husband fished too much, but the record does not disclose any neglect of wife because of his fishing which would legally justify leaving the marital relationship. When they were first married, wife participated in this recreational activity, but as time passed she declined to go fishing with him.

Wife claimed that husband "hammered" or beat upon her, asking that she leave the home. No specific dates or occasions were shown and there was no complaint concerning this in the immedi-

ate time frame of the separation on September 6, 1982. Wife's allegations were general in nature and vague as to time and place.

A divorce from the bond of matrimony may be decreed where either party has willfully deserted or abandoned the other, and such divorce may be decreed to the innocent party after a period of one year from the date of such act. Code § 20-91(6). "Desertion is a breach of matrimonial duty, and is composed first, of the actual breaking off of the matrimonial cohabitation, and secondly, an intent to desert in the mind of the offender. Both must combine to make the desertion complete." *Nash* v. *Nash,* 200 Va. 890, 893, 108 S.E.2d 350, 352 (1958) (quoting *Bailey* v. *Bailey,* 62 Va. (21 Gratt.) 43, 47 (1871)); *see also Miller* v. *Miller,* 196 Va. 698, 700, 85 S.E.2d 221, 222 (1955). In the absence of justification apparent from plaintiff's own evidence, proof by plaintiff of an actual breaking off of matrimonial cohabitation, combined with the intent to desert in the mind of the offender, entitles a deserted party to a divorce. When such desertion is established, the duty of going forward with evidence of justification and excuse then rests on the defendant, unless such justification appears from testimony adduced by the plaintiff. *Graham* v. *Graham,* 210 Va. 608, 610, 172 S.E.2d 724, 726 (1970); *D'Auria* v. *D'Auria,* 1 Va. App. 455, 459, 340 S.E.2d 164, 166 (1986).

In the present case, the evidence clearly establishes that on September 6, 1982, wife moved from the family home at a time when husband was at work, taking her clothing and belongings with her, with the intent on her part to break off matrimonial cohabitation with husband, and with intent to desert him. The duty of going forward with the evidence to excuse or justify her actions then rested upon the wife.

To constitute a defense to the husband's prima facie showing of desertion, the wife must prove misconduct on the part of the husband sufficient in scope to constitute a ground of divorce in her favor against the husband. The Supreme Court has consistently held that one spouse is not justified in leaving the other unless the conduct of the wrongdoer could be made the foundation of a judicial proceeding for divorce. Nothing short of such conduct will justify a willful separation or a continuance of it. *Guy* v. *Guy,* 210 Va. 536, 539, 172 S.E.2d 735, 738 (1970); *Wimbrow* v. *Wimbrow,* 208 Va. 141, 143, 156 S.E.2d 598, 601 (1967); *Lawyer* v. *Lawyer,* 207 Va. 260, 264, 148 S.E.2d 816, 819 (1966); *Stolfi* v.

*Stolfi,* 203 Va. 696, 701, 126 S.E.2d 923, 927 (1962); *Gentry* v. *Gentry,* 161 Va. 786, 791, 172 S.E. 157, 158 (1934); *Towson* v. *Towson,* 126 Va. 640, 655, 102 S.E. 48, 53 (1920).

As her defense, wife contends that under the circumstances she was justified in leaving her husband on September 6, 1982, because his cruel treatment was tantamount to desertion. She argues that this constructive desertion on the part of husband is a defense to his bill of complaint and constitutes grounds for a final divorce on her cross-bill. Acknowledging in her brief that the Supreme Court has held that one spouse is not justified in leaving the other unless the conduct of the other is sufficient to establish a foundation of a judicial proceeding for divorce, she cites *Rowand* v. *Rowand,* 215 Va. 344, 210 S.E.2d 149 (1974), *Capps* v. *Capps,* 216 Va. 382, 219 S.E.2d 898 (1975), and *Breschel* v. *Breschel,* 221 Va. 208, 269 S.E.2d 363 (1980), as authority for her claim that even though she cannot show that the conduct of her husband established grounds for divorce, nevertheless, she was free from legal fault in breaking off cohabitation and was entitled to an award of spousal support. We find that these cases factually are easily distinguishable.

In *Rowand* difficulties had arisen between the parties over financial matters. The wife insisted on her right to purchase clothing for herself, and shoes and medicine for their child, before contributing to the family's joint bank account. The husband told the wife, "Well, if that is the way you are going to be about it, get out." The wife then got a few of her possessions together and left. 215 Va. at 345, 210 S.E.2d at 150. The wife instituted a suit for divorce on the grounds of cruelty and constructive desertion. The husband did not file a cross-bill, but answered, denying the wife's allegations. The Supreme Court identified the issue presented as "whether the evidence of the husband's statements to the wife to 'get out,' unaccompanied by sufficiently corroborated evidence of other acts contributing to cause her departure, justified the award of the divorce to the wife on the ground of the husband's constructive desertion." *Id.* at 345, 210 S.E.2d at 150. The court held that the facts did not amount to constructive desertion or cruelty and refused to grant a divorce to the wife. The court further noted that the husband would not have been entitled to a divorce had he asked for one, in view of his conduct in ordering the wife to "get out." The court went on to hold that under Code § 20-107 (now

Code § 20-107.1), upon decreeing that neither party is entitled to a divorce, a court may award spousal support, stating that "[a] wife forfeits her right to maintenance and support from her husband only if her misconduct constitutes grounds for divorce." *Id.* at 346, 210 S.E.2d 151.

In *Capps* the husband was wounded in Vietnam, and as a result his arm was paralyzed; he wore a leg brace for support and he had a plate in his head. In the course of an argument, he struck his wife, choked her, and said, "You and your bastard (wife's daughter by a previous marriage) get out of here." The wife and children left. 216 Va. at 383-84, 219 S.E.2d at 899. The husband filed a suit for divorce on the ground of desertion, and the wife filed a cross-bill based upon cruelty. With regard to the cross-bill, the Supreme Court stated that a single act of physical cruelty does not constitute ground for divorce, unless it is so severe and atrocious as to endanger life, or cause reasonable apprehension of serious dangers in the future, or the precedent or attendant circumstances show that the acts are likely to be repeated. *Id.* at 384, 219 S.E.2d at 900. The court found that although the wife's evidence did not establish cruelty entitling her to a divorce, the husband was not then entitled to a divorce on the ground of desertion. *Id.* at 385, 219 S.E.2d at 900.

In *Breschel* the wife had multiple sclerosis and at the time she left her husband, she had significant deterioration in her physical condition, was unable to cope with her household duties, and was unable to take care of husband's young son. She broke off cohabitation because she reasonably believed that her health was endangered by remaining in the home. Her allegations were corroborated by substantial medical evidence. 221 Va. at 210-11, 269 S.E.2d at 364-65. The husband filed for a divorce on the ground of desertion. The Supreme Court held that under the factual circumstances the husband was not entitled to a divorce because the wife was not guilty of desertion in leaving him when she reasonably believed her health was endangered by remaining in the household and had unsuccessfully taken whatever reasonable measures might eliminate the danger. The decree granting the divorce to the husband was reversed and the case was remanded for further proceedings on the wife's cross-bill. *Id.* at 212-13, 269 S.E.2d at 366.

In all three of these cases — *Rowand, Capps* and *Breschel* — none of the husbands established misconduct on the part of their spouses which constituted grounds for divorce. Therefore, the wives did not forfeit their right to spousal support. This distinguishes these cases from the instant case, since we hold as a matter of law that Mr. Zinkhan was entitled to a divorce on the ground of desertion.

▪ It is true, of course, that desertion as a ground of divorce does not depend on who actually leaves the family home. It means desertion of the marital relationship. Desertion may be "constructive," for cruelty by one party, which results in the other party's enforced separation, is tantamount to desertion by the party performing the cruel acts. *Hoffecker* v. *Hoffecker,* 200 Va. 119, 125-26, 104 S.E.2d 771, 776 (1958); *Elder* v. *Elder,* 139 Va. 19, 26, 123 S.E. 369, 371 (1924).

One of the earliest reported divorce cases in Virginia undertook to define cruelty. In the leading case of *Latham* v. *Latham,* 71 Va. (30 Gratt.) 307, 320-22 (1878), cruelty is defined as follows:

> According to the authorities, the cruelty that authorizes a divorce is anything that tends to bodily harm and thus renders cohabitation unsafe; or, as expressed in the older decisions, that involves danger of life, limb or health. I agree there may be cases in which the husband, without violence, actual or threatened, may render the marriage state impossible to be endured. There may be angry words, coarse and abusive language, humiliating insults, and annoyances in all the forms that malice can suggest, which may as effectually endanger life or health as personal violence, and which, therefore, would afford grounds for relief by the court. But it is obvious that what merely wounds the feelings without being accompanied by bodily injury or actual menace — mere austerity of temper, petulance of manner, rudeness of language, want of civil attention and accommodation, or even occasional sallies of passion that do not threaten bodily harm, although they be high offenses against morality in the married state, does not amount to legal cruelty. It is so laid down by the leading authorities in England, and in this country, and is so declared by this court in *Carr* v. *Carr,* 22 Gratt, 168, 175; 1 Minor Institutes and cases cited, 256, 257. In the language

of a very great judge: 'Under such misconduct of either of the parties, for it may exist on one side as well as the other, the suffering party must bear, in some degree, the consequences of an injudicious connexion; must subdue, by decent resistance or prudent conciliation; and if this cannot be done, both must suffer in silence. And, if it is complained that by this inactivity of the courts much injustice may be suffered, and much misery produced, the answer is that courts of justice do not pretend to furnish cures for all the miseries of human life. They punish or redress gross violations of duty — they cannot make men virtuous; and as the happiness of the world depends upon its virtue, there may be much unhappiness which human laws cannot undertake to remove.'

■ Well established principles governing the granting of a divorce for fault hold that the law does not permit courts to sever marriage bonds and to break up households merely because husband and wife, through unruly tempers, lack of patience and uncongenial natures, live unhappily together. It requires them to submit to the ordinary consequences of human infirmities and unwise selections, and the misconduct which will form a good ground for legal separation must be very serious and such as amounts to extreme cruelty, entirely subversive of the family relations rendering the association intolerable. *See Coe* v. *Coe,* 225 Va. 616, 619, 303 S.E.2d 923, 925 (1983); *Johnson* v. *Johnson,* 213 Va. 204, 211, 191 S.E.2d 206, 211 (1972); *DeMott* v. *DeMott,* 198 Va. 22, 28, 92 S.E.2d 342, 346 (1956); *Bisel* v. *Bisel,* 197 Va. 636, 638, 90 S.E.2d 779, 780 (1956); *Upchurch* v. *Upchurch,* 194 Va. 990, 1000, 76 S.E.2d 170, 176-77 (1953).

When we apply the standards in the case law to the facts and circumstances of this case, we do not find that the husband is guilty of cruelty tantamount to desertion. He is not guilty of such misconduct that is sufficient to establish the foundation of a judicial proceeding for divorce. Therefore, wife's defense to the bill of complaint was not proved and, accordingly, as a matter of law, husband is entitled to a divorce from the bond of matrimony on the ground of willful desertion, or, alternatively, an adjudication by the court that wife was guilty of desertion. Because the wife broke off matrimonial cohabitation with an intent to desert and without legal justification, the cross-bill of wife on the ground of

constructive desertion was properly rejected.

■ It is settled law in this Commonwealth that a party shall not be required to pay permanent spousal support if there exists in such spouse's favor a ground of divorce under Code § 20-91(6). Code § 20-107.1; *Brooker* v. *Brooker,* 218 Va. 12, 13, 235 S.E.2d 309, 310 (1977); *Young* v. *Young,* 212 Va. 761, 762, 188 S.E.2d 200, 201 (1972); *McClung* v. *McClung,* 206 Va. 782, 782-83, 146 S.E.2d 195, 196 (1966).

■ Where dual grounds for divorce exist, the trial judge is not required to grant a divorce under the one year separation statute. He can use his sound discretion to select the appropriate grounds upon which he will grant the divorce. *Robertson* v. *Robertson,* 215 Va. 425, 426-27, 211 S.E.2d 41, 43 (1975). We see no reason to disturb the decision to grant the divorce based upon the one year separation statute. However, having found as a matter of law that husband established the grounds for divorce based upon desertion, we must reverse the order awarding spousal support to the wife.

In summary, we reverse the factual finding of the trial court that neither party sustained the burden of establishing grounds for a divorce from the other on the grounds of fault. For the reasons stated, we hold that the plaintiff, Benjamin Christian Zinkhan, did sustain the burden of proving desertion on the part of the defendant, Linda Palmer Zinkhan, on September 6, 1982. We affirm the judgment insofar as it granted husband a divorce upon the ground of one year separation, but vacate the requirement that husband pay spousal support to wife.

*Affirmed in part,*
*vacated in part,*
*and final judgment.*

Coleman, J., and Moon, J., concurred.